## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAVID J. ACKLEY, JR.                    )
JANE F. BOYLE                           )
DAVID J. ACKLEY, SR.                    )
SCOTT H. ACKLEY                         )
SHERRY A. BESSETTE                      )
                                        )
RITA G. ACKLEY                          )
DONALD STIDHAM                          )
ALEATHA C. HARRIS                       )
                                        )
SANDRA J. BENEWAY                       )
MARI E. DeLACY                          )
MARSHALL L. BENEWAY                     )
BARBARA A. CROCCO                       )
CAROL BRUNS-BENEWAY SMITH               )
                                        )
PHILIP W. BROWN                         )
KAREN M. VOIE                           )
INGRID K. SIMPSON                       )
                                        )
LISA M. CAFIERO                         )
CHRISTINA L. MATTINGLY                  )
                                        )
JASON D. CARLEY                         )
                                        )
MANUEL J. CARRASCO                      )
KIRSTEN I. CARRASCO                     )
                                        )
ALLIA M. COLEMAN                        )
LANA L. COLEMAN-WIGGINS                 )
DEMETRIUS COLEMAN                       )
CHARLIE E. COLEMAN                      )
CORNELIUS COLEMAN                       )
                                        )
DALLAS W. CROFT                         )
JULI A. CROFT                           )
DALLAS T. CROFT                         )
ANDREW K. CROFT                         )
                                        )
CRAIG J. DICK                           )
KATHLEEN A. DICK                        )

1

CRAIG W. DICK                                    )
BRETT M. DICK                                    )
CORY P. DICK                                     )
                                                 )
JASON B. DIXON                                   )
DONNA J. DIXON                                   )
                                                 )
CARRIE L. DOBOS                                  )
EDWARD C. DOBOS                                  )
MOLLY A. DOBOS                                   )
ERIKA L. RUST                                    )
KASEY D. PHILLIPS                                )
HALEY I. DOBOS                                   )
ANNE M. FRENCH                                   )
CHARLES D. FRENCH                                )
TINA M. JUDGE                                    )
BRENDA J. FRENCH              `                  )
DENA J. DeJOE                                    )
                                                 )
CHRISTOPHER O. DOGGETT                           )
SHERRIE K. McBRIDE                               )
ALYXANDRA L. DOGGETT                             )
SANDRA L. SKINNER                                )
                                                 )
BRYAN W. FOX                                     )
SYLVETTA E. FOX                                  )
WALTER W. FOX, JR.                               )
                                                 )
JOHN P. GARCIA, JR.                              )
VIRGINIA R. GARCIA                               )
JOHN P. GARCIA, SR.                              )
MICHAEL GARCIA                                   )
                                                 )
STEVEN D. GARCIA                                 )
                                                 )
CARL R. HAMILTON, JR.                            )
KAREN M. RAINVILLE                               )
DENNIS A. RAINVILLE                              )
LISA M. GLENN                                    )
AUTUMN HAMILTON LYON                             )
                                                 )
JEFFREY L. HILL                                  )
ADRIENNE L. FULTON                               )
                                                 )
GREGORY M. HILLABRANT                            )
JANE M. HILLABRANT                               )

STEPHEN R. HILLABRANT                      )
                                           )
STEVEN JARONSKY                            )
ELSIE LOMBARDO                             )
                                           )
RICHARD R. JIRON                           )
BRANDY O.  JIRON                           )
KIMBERLY J. JIRON                          )
RANDALL R. JIRON                           )
                                           )
CHRISTOPHER M. JOHNSON                     )
                                           )
ROGER K. KAALEKAHI IV                      )
VALERIE M. KAALEKAHI                       )
KIANA K. KAALEKAHI                         )
                                           )
DAVID A. KRUEGER                           )
                                           )
DAVID W. LONG, SR.                         )
CYNTHIA A. LONG                            )
DAVID W. LONG, JR.                         )
                                           )
JOHN G. McCARTHY                           )
                                           )
JASON L. MELVIN                            )
                                           )
FLOR D. MORALES                            )
MARTINA ORTIZ                              )
                                           )
MORRIS M. MYERS, JR.                       )
SHERRY D. BYES                             )
                                           )
ELISHA J. NOVELL                           )
                                           )
MARK W. O'TOOLE                            )
STACEY L. O'TOOLE                          )
KAYLA L.  KASTEN                           )
KELSIE E. O'TOOLE                          )
                                           )
ELDRED E. PAILIN                           )
                                           )
JEREMY L. PARRATT                          )
PRISCILLA R. BRADLEY                       )
AMY P. HALL                                )
                                           )
PASCHA R. PAYTON                           )

MICHAEL J. PERFETTI )
                                     )
RAFAEL RIVERA, JR. )
    )
DAVID C. ROBINSON )
    )
TRENA W. SCHMIDT )
    )
MICHAEL S. SPENCER )
TALENA M. SPENCER )
    )
ANDRE L. STANTON )
    )
BILLY J. STEWART )
    )
STELLA L. THOT )
    )
MICHAEL D. WEIMER )
    )
ANTHONY J. WHITING )
    )
ROBERT K. YOUNG )
    )
       Plaintiffs, )
    )
       v. )      Case No. 1:20-cv-621
    )
ISLAMIC REPUBLIC OF IRAN )
c/o Ministry of Foreign Affairs )
Imam Khomeini Street )
Imam Khomeini Square )
Tehran, Iran   1136914811 )
    )
       Defendant. )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **COMPLAINT**

Plaintiffs, by and through their undersigned counsel, seek judgment against Defendant, the Islamic Republic of Iran, pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605A, and applicable state and common law.

4

## I.   **INTRODUCTION**

This action is brought by plaintiffs through counsel against the Islamic Republic of Iran (hereinafter "Iran") for orchestrating the June 25, 1996 bombing of the United States Air Force facility at the Khobar Towers in Dhahran, Saudi Arabia. The bombing killed 19 American service members and wounded hundreds of others.   Plaintiffs are forty (40) of the injured American service members who suffered physical and/or mental and emotional injuries in the bombing; sixty-one (61) of their immediate family members; and eleven (11) immediate family members of injured airmen who were plaintiffs in *Schooley v. Islamic Republic of Iran*, 17-1376 (D.D.C. 2019), a previous action arising out of the Khobar Towers bombing, who were awarded compensatory damages.   Plaintiffs seek compensatory and punitive damages as provided by 28 U.S.C. §1605A(c) and state statutory and common law.

## II.   **JURISDICTION AND VENUE AND CHOICE OF LAW**

1.      Jurisdiction in this Court arises pursuant to 28 U.S.C. §§ 1605A, 1330(a), 1331, and 1332(a)(2).

2.      Defendant Iran is subject to suit in the courts of the United States as a sponsor of the terrorist group Hezbollah pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605A(a), and related statutes, including Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j), Section 40 of the Arms Export Control Act (22 U.S.C. § 2780), and Section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371), which designated Iran as a state sponsor of terrorism.

3.      28 U.S.C. § 1605A provides a federal private right of action against foreign state sponsors of terror for personal injury or death caused by acts of terrorism and providing for

5

damages including economic damages, solatium, pain and suffering, and punitive damages. 28 U.S.C. § 1605A(c).

4.     South Carolina Code §15-75-20 provides a cause of action for loss of companionship of spouse arising from an intentional or tortious violation of the right to the companionship, aid, society and services of his or her spouse. S.C. Code Ann. 15-75-20.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4).  Actions for personal injury, death, and related torts perpetrated by foreign state sponsors of terrorism through their officials, employees, and agents fall within the meaning of 28 U.S.C. § 1605A generally.

### III.   PARTIES

#### A.  PLAINTIFFS

6.     Plaintiff **David Joseph Ackley, Jr.** is a United States citizen.  At the time of the acts alleged herein, he was a United States citizen and an Airman First Class in the U.S. Air Force stationed at Langley Air Force Base, Virginia with the 4415th Intelligence Squadron, deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers.  He worked as a computer operator. He is the husband of injured airman plaintiff **Rita G. Ackley**, to whom he was married at the time of the Khobar Towers bombing, and who was also injured in the Khobar Towers attack. Mr. Ackley brings this claim as a surviving injured plaintiff and also as an immediate family member of plaintiff **Rita G. Ackley**.

7.     Plaintiff **Jane Frances Boyle** is a United States citizen.  She is the mother of plaintiff **David J. Ackley Jr.**

8.     Plaintiff **David Joseph Ackley, Sr.** is a United States citizen.  He is the father of plaintiff **David J. Ackley, Jr.**

9.     Plaintiff **Scott Harland Ackley** is a United States citizen.  He is the brother of plaintiff **David J. Ackley Jr.**

10.     Plaintiff **Sherry Ann Bessette** is a United States citizen.  She is the sister of plaintiff **David J. Ackley Jr.**

11.     Plaintiff **Rita Gayle Ackley** is a United States citizen.  At the time of the acts alleged herein, Ms. Ackley was a United States citizen and an Airman First Class in the U.S. Air Force stationed at Langley Air Force Base, Virginia with the 4415th Intelligence Squadron, deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers. She was a computer operator with the 10th Intelligence Squadron. She is the wife of injured airman plaintiff **David J. Ackley, Jr**., to whom she was married at the time of the Khobar Towers bombing, and who was also injured in the Khobar Towers attack. Ms. Ackley brings this claim as a surviving injured plaintiff and also as an immediate family member of plaintiff **David J. Ackley, Jr.**

12.     Plaintiff **Donald Stidham** is a United States citizen.  He is the father of plaintiff Rita Ackley.

13.     Plaintiff **Aleatha Carolyn Harris** is a United States citizen.  She is the sister of plaintiff Rita Ackley.

14.     Plaintiff **Sandra Jean Beneway** is a United States citizen.  At the time of the acts alleged herein, Ms. Beneway was a United States citizen, domiciled in South Carolina, and a Captain in the United States Air Force stationed with the 437th Civil Engineer Squadron at Charleston Air Force Base in South Carolina and deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers.  She was chief of the Civil Engineer Squadron and worked in disaster preparedness.

15.     Plaintiff **Mari Ethna DeLacy** is a British citizen and lawful permanent resident of the United States.  She is the wife of plaintiff **Sandra J. Beneway**.  At the time of the acts alleged herein, Ms. DeLacy was a British citizen and lawful permanent resident of the United States domiciled in South Carolina and was the common law wife of Ms. Beneway.

16.     Plaintiff **Marshall Lee Beneway** is a United States citizen.  He is the brother of plaintiff **Sandra J. Beneway**.

17.     Plaintiff **Barbara Ann Crocco** is a United States citizen.  She is the sister of plaintiff **Sandra J. Beneway**.

18.     Plaintiff **Carol Bruns-Beneway Smith** is a United States citizen.  She is the sister of plaintiff **Sandra J. Beneway**.

19.     Plaintiff **Philip William Brown** is a United States citizen.  He is the father of Kyle W. Brown, a United States citizen and a member of the United States Air Force who was seriously injured in the Khobar Towers bombing.  Kyle W. Brown was a plaintiff in *Schooley v. Islamic Republic of Iran*, <u>supra</u>, and was awarded compensatory damages by this Court for the injuries he sustained in the Khobar Towers bombing.

20.     Plaintiff  **Karen Marie Voie** is a United States citizen.  She is the mother of Kyle W. Brown, a United States citizen and a member of the United States Air Force who was seriously injured in the Khobar Towers bombing.  Kyle W. Brown was a plaintiff in *Schooley v. Islamic Republic of Iran*, <u>supra</u>, and was awarded compensatory damages by this Court for the injuries he sustained in the Khobar Towers bombing.

21.     Plaintiff **Ingrid Kjersti Simpson** is a United States citizen.  She is the sister of Kyle W. Brown, a United States citizen and a member of the United States Air Force who was seriously injured in the Khobar Towers bombing.  Kyle W. Brown was a plaintiff in *Schooley v.*

*Islamic Republic of Iran*, <u>supra</u>, and was awarded compensatory damages by this Court for the injuries he sustained in the Khobar Towers bombing.

22.    Plaintiff **Lisa Marie Cafiero** is a United States citizen.  At the time of the acts alleged herein, Ms. Cafiero was a United States citizen and a Chief Master Sergeant in the U.S. Air Force stationed at Edwards Air Force Base in California with the 412th CRS (AFMC) and deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers. She was the Chief Enlisted Manager of the Logistics Group, then reassigned as the Senior Enlisted Advisor at Khobar Towers.

23.    Plaintiff **Christina Lucile Mattingly** is a United States citizen.  She is the daughter of plaintiff **Lisa M. Cafiero**.

24.    Plaintiff **Jason David Carley** is a United States citizen.  At the time of the acts alleged herein, Mr. Carley was a United States citizen and a Senior Airman in the U.S. Air Force stationed at Beale Air Force Base in California with the 9th Reconnaissance Squadron and deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers.  He work in vehicle maintenance.

25.    Plaintiff **Manuel José Carrasco** is a United States citizen.  At the time of the acts alleged herein, Mr. Carrasco was a United States citizen and a Staff Sergeant in the U.S. Air Force stationed at Vandenberg Air Force Base in California and deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers.  He worked as a water plant operator.

26.    Plaintiff **Kirsten Irene Carrasco** is a United States citizen.  She is the wife of plaintiff **Manuel J. Carrasco**.

27.    Plaintiff **Allia Mae Coleman** is a United States citizen.  She is the mother of Artis R. Coleman, Sr., a United States citizen and a member of the United States Air Force who was

seriously injured in the Khobar Towers bombing.  Mr. Coleman was a plaintiff in *Schooley v. Islamic Republic of Iran*, <u>supra</u>, and was awarded compensatory damages by this Court for the injuries he sustained in the Khobar Towers bombing.

28.    Plaintiff **Lana Lovell Coleman-Wiggins** is a United States citizen.  She is the sister of Artis R. Coleman, Sr., a United States citizen and a member of the United States Air Force who was seriously injured in the Khobar Towers bombing.  Mr. Coleman was a plaintiff in *Schooley v. Islamic Republic of Iran*, <u>supra</u>, and was awarded compensatory damages by this Court for the injuries he sustained in the Khobar Towers bombing.

29.    Plaintiff **Demetrius Coleman**  is a United States citizen.  She is the sister of Artis R. Coleman, Sr., a United States citizen and a member of the United States Air Force who was seriously injured in the Khobar Towers bombing.  Mr. Coleman was a plaintiff in *Schooley v. Islamic Republic of Iran*, <u>supra</u>, and was awarded compensatory damages by this Court for the injuries he sustained in the Khobar Towers bombing.

30.    Plaintiff **Charlie Earl Coleman** is a United States citizen.  He is the brother of Artis R. Coleman, Sr., a United States citizen and a member of the United States Air Force who was seriously injured in the Khobar Towers bombing.  Mr. Coleman was a plaintiff in *Schooley v. Islamic Republic of Iran*, <u>supra</u>, and was awarded compensatory damages by this Court for the injuries he sustained in the Khobar Towers bombing.

31.    Plaintiff **Cornelius Coleman** is a United States citizen.  He is the brother of Artis R. Coleman, Sr., a United States citizen and a member of the United States Air Force who was seriously injured in the Khobar Towers bombing.  Mr. Coleman was a plaintiff in *Schooley v. Islamic Republic of Iran*, <u>supra</u>, and was awarded compensatory damages by this Court for the injuries he sustained in the Khobar Towers bombing.

32.     Plaintiff **Dallas Wayne Croft** is a United States citizen.  At the time of the acts alleged herein, Mr. Croft was a United States citizen and a Staff Sergeant in the U.S. Air Force stationed at Langley Air Force Base and deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers. He worked as an information systems security officer.

33.     Plaintiff **Juli Ann Croft** is a United States citizen.  She is the wife of plaintiff **Dallas W. Croft**.

34.     Plaintiff **Dallas Taylor Croft** is a United States citizen.  He is the son of plaintiff **Dallas W. Croft**.

35.     Plaintiff **Andrew Kegan Croft** is a United States citizen.  He is the son of plaintiff **Dallas W. Croft**.

36.     Plaintiff **Craig Jason Dick** is a United States citizen.  At the time of the acts alleged herein, Mr. Dick was a United States citizen and a Senior Airman in the U.S. Air Force stationed at Holloman Air Force Base in New Mexico, 49th Security Forces Squadron and deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers.

37.     Plaintiff **Kathleen Ann Dick** is a United States citizen.  She is the mother of plaintiff **Craig J. Dick.**

38.     Plaintiff **Craig William Dick** is a United States citizen.  He is the father of plaintiff **Craig J. Dick.**

39.     Plaintiff **Brett Michael Dick** is a United States citizen.  He is the brother of plaintiff **Craig J. Dick.**

40.     Plaintiff **Cory Patrick Dick** is a United States citizen.  He is the brother of plaintiff **Craig J. Dick.**

41.     Plaintiff **Jason Bryan Dixon** is a United States citizen.  At the time of the acts alleged herein, Mr. Dixon was a United States citizen and a Senior Airman in the U.S. Air Force stationed at Eglin Air Force Base in Florida with the 33rd Fighter Wing, 58th Fighter Squadron, deployed to  Dhahran, Saudi Arabia and quartered at Khobar Towers. He was a tactical aircraft maintenance specialist.

42.     Plaintiff **Donna Jean Dixon** is a United States citizen.  She is the wife of plaintiff **Jason B. Dixon**.

43.     Plaintiff **Carrie Lynn Dobos** is a United States citizen.  At the time of the acts alleged herein, Ms. Dobos was a United States citizen and a Technical Sergeant in the U.S. Air Force stationed at Dover Air Force Base in Delaware with the 436th Civil Engineering Squadron deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers.  She worked in facility management.

44.     Plaintiff **Edward Charles Dobos** is a United States citizen.  He is the husband of plaintiff **Carrie Dobos**.

45.     Plaintiff **Molly Anne Dobos** is a United States citizen.  She is the daughter of plaintiff **Carrie Dobos**.

46.     Plaintiff **Erika Lynn Rust** is a United States citizen.  She is the daughter of plaintiff **Carrie Dobos**.

47.     Plaintiff **Kasey Dyan Phillips** is a United States citizen.  She is the daughter of plaintiff **Carrie Dobos**.

48.     Plaintiff **Haley Irene Dobos** is a United States citizen.  She is the daughter of plaintiff **Carrie Dobos**.

49.     Plaintiff **Anne Marie French** is a United States citizen.  She is the mother of plaintiff **Carrie Dobos**.

50.     Plaintiff **Charles Dean French** is a United States citizen.  He is the father of plaintiff **Carrie Dobos**.

51.     Plaintiff **Tina Marie Judge** is a United States citizen.  She is the sister of plaintiff **Carrie Dobos**.

52.     Plaintiff **Brenda Jean French** is a United States citizen.  She is the sister of plaintiff **Carrie Dobos**.

53.     Plaintiff **Dena Lynn DeJoe** is a United States citizen.  She is the sister of plaintiff **Carrie Dobos**.

54.     Plaintiff **Christopher O'Neill Doggett** is a United States citizen.  At the time of the acts alleged herein, Mr. Doggett was a United States citizen and a Senior Airman in the United States Air Force stationed at Travis Air Force Base and deployed to Dhahran, Saudi Arabia with the 4404th Civil Engineers and quartered at Khobar Towers.

55.     Plaintiff **Sherrie Kay McBride** is a United States citizen.  She is the mother of plaintiff **Christopher O. Doggett.**

56.     Plaintiff **Alyxandra Lynn Doggett** is a United States citizen.  She is the daughter of plaintiff **Christopher O. Doggett.**

57.     Plaintiff **Sandra Lynn Skinner** is a United States citizen.  She is the sister of plaintiff **Christopher O. Doggett.**

58.     Plaintiff **Bryan Walter Fox** is a United States citizen.  At the time of the acts alleged herein, Mr. Fox was a United States citizen and an Airman First Class in the U.S. Air Force stationed at Eglin Air Force Base in Florida with the 58th Fighter Squadron, 33rd Fighter

Wing and deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers. He worked with F-15 aircraft as a Crew Chief, Tactical Aircraft Maintenance Specialist.

59.     Plaintiff **Sylvetta Eileen Fox** is a United States citizen.  She is the mother of plaintiff **Bryan W. Fox**.

60.     Plaintiff **Walter William Fox, Jr.** is a United States citizen.  He is the father of plaintiff **Bryan W. Fox**.

61.     Plaintiff **John Paul Garcia, Jr**. is a United States citizen.  At the time of the acts alleged herein, Mr. Garcia was a United States citizen and a Senior Airman in the U.S. Air Force stationed at Edwards Air Force Base in California and deployed to Dhahran, Saudi Arabia with the 4404th Expeditionary Fighter Wing, and quartered at Khobar Towers. He was a vehicle operator.

62.     Plaintiff **Virginia Rose Garcia** is a United States citizen.  She is the mother of plaintiff **John P. Garcia, Jr.**

63.     Plaintiff **John Paul Garcia, Sr.** is a United States citizen.  He is the father of plaintiff **John P. Garcia, Jr.**

64.     Plaintiff **Michael Garcia** is a United States citizen.  He is the brother of plaintiff **John P. Garcia, Jr.**

65.     Plaintiff **Steven Dax Garcia** is a United States citizen.  At the time of the acts alleged herein, Mr. Garcia was a United States citizen and a Senior Airman in the United States Air Force stationed at Langley Air Force Base in Virginia with the 30th Intelligence Squadron and deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers.  He worked as an intelligence analyst.

66.     Plaintiff **Carl Richard Hamilton, Jr.** is a United States citizen.  At the time of the acts alleged herein, Mr. Hamilton was a United States citizen and an Airman First Class in the U.S. Air Force stationed at Eglin Air Force Base in Florida with the 58th Squadron, 33rd Fighter Wing, deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers.  He worked with F-15 aircraft as an aircraft armament systems specialist.

67.     Plaintiff **Karen Marlene Rainville** is a United States citizen.  She is the mother of plaintiff **Carl R. Hamilton, Jr.**

68.     Plaintiff **Dennis Arthur Rainville** is a United States citizen.  He is the stepfather of plaintiff **Carl R. Hamilton, Jr.**

69.     Plaintiff **Lisa Marlene Glenn** is a United States citizen.   She is the sister of plaintiff **Carl R. Hamilton, Jr.**

70.     Plaintiff **Autumn Hamilton Lyon** is a United States citizen.  She is the former wife of plaintiff **Carl R. Hamilton, Jr.** and was married to him at the time of the Khobar Towers bombing.

71.     Plaintiff **Jeffrey Lynn Hill** is a United States citizen.  At the time of the acts alleged herein, Mr. Hill was a United States citizen and a Staff Sergeant in the U.S. Air Force stationed at Eglin Air Force Base in Florida.  He was deployed to Dhahran, Saudi Arabia with the 58th Fighter Squad and quartered at Khobar Towers.  He worked as an aircraft electrical and environmental systems specialist.

72.     Plaintiff **Adrienne Lee Fulton** is a United States citizen.  She is the sister of plaintiff **Jeffrey L. Hill.**

73.     Plaintiff **Gregory Martin Hillabrant** is a United States citizen.  At the time of the acts alleged herein, Mr. Hillabrant was a United States citizen and a Senior Airman in the

United States Air Force deployed to Dhahran, Saudi Arabia with the 4404th Maintenance Squad and quartered at Khobar Towers. He worked as a crash recovery specialist.

74.     Plaintiff **Jane Marie Hillabrant** is a United States citizen.  She is the mother of plaintiff **Gregory M. Hillabrant**.

75.     Plaintiff **Stephen Robert Hillabrant** is a United States citizen.  He is the brother of plaintiff **Gregory M. Hillabrant**.

76.     Plaintiff **Steven Jaronsky** is a United States citizen.  At the time of the acts alleged herein, Mr. Jaronsky was a United States citizen and a Senior Airman in the United States Air Force stationed at Eglin Air Force Base in Florida with the 58th Fighter Squadron and deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers.  He worked with F-15 aircraft as a Crew Chief, Tactical Aircraft Maintenance Specialist.

77.     Plaintiff **Elsie Lombardo** is a United States citizen.  She is the mother of plaintiff **Steven Jaronsky**.

78.     Plaintiff **Richard Randall Jiron** is a United States citizen.  At the time of the acts alleged herein, Mr. Jiron was a United States citizen and a Staff Sergeant in the U.S. Air Force with the 90th Contracting Squadron, stationed at F.E. Warren Air Force Base in Wyoming, and deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers.  He worked as a contracting specialist.

79.     Plaintiff **Brandy Ok Jiron** is a United States citizen.  She is the wife of plaintiff **Richard R. Jiron**.

80.     Plaintiff **Kimberly June Jiron** is a United States citizen.  She is the daughter of plaintiff **Richard R. Jiron**.

81.     Plaintiff **Randall Russell Jiron** is a United States citizen.  He is the son of plaintiff **Richard R. Jiron**.

82.     Plaintiff **Christopher Michael Johnson** is a United States citizen.  He is the brother of Stephen K. Johnson, a United States citizen and a member of the United States Air Force who was injured in the Khobar Towers bombing.  Stephen K. Johnson was a plaintiff in *Schooley v. Islamic Republic of Iran*, supra, and was awarded compensatory damages by this Court for the injuries he sustained in the Khobar Towers bombing.

83.     Plaintiff **Roger Kaaua Kaalekahi IV** is a United States citizen.  At the time of the acts alleged herein, Mr. Kaalekahi was a United States citizen and a Senior Airman in the U.S. Air Force stationed at Malmstrom Air Force Base with the 490th Missile Squadron in Montana.  He was deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers. He worked in the security police.

84.     Plaintiff **Valerie Marie Kaalekahi** is a United States citizen.  She is the wife of plaintiff **Roger K. Kaalekahi IV**.

85.     Plaintiff **Kiana Keaolani Kaalekahi** is a United States citizen.  She is the daughter of plaintiff **Roger K. Kaalekahi IV**.

86.     Plaintiff **David Alan Krueger** is a United States citizen.  At the time of the acts alleged herein, Mr. Krueger was a United States citizen and an Airman First Class in the U.S. Air Force stationed at Eglin Air Force base in Florida and deployed to Dhahran, Saudi Arabia with the 96th Mission Support Squadron and quartered at Khobar Towers.  He worked as an F-15 egress systems technician.

87.     Plaintiff **David William Long, Sr.**, is a United States citizen.  At the time of the acts alleged herein, Mr. Long was a United States citizen and a Staff Sergeant in the U.S. Air

Force stationed at Seymour Johnson Air Force Base in North Carolina and deployed to Dhahran, Saudi Arabia with the 4th Equipment Maintenance Squadron and quartered at Khobar Towers. He worked as a tactical aircraft maintenance specialist.

88.    Plaintiff **Cynthia Ann Long** is a United States citizen.  She is the wife of plaintiff **David W. Long, Sr**.

89.    Plaintiff **David William Long, Jr.** is a United States citizen.  He is the son of plaintiff **David W. Long, Sr**.

90.    Plaintiff **John Gary McCarthy** is a United States citizen.  At the time of the acts alleged herein, Mr. McCarthy was a United States citizen and a Staff Sergeant in the U.S. Air Force stationed at Patrick Air Force Base in Florida and deployed to Dhahran, Saudi Arabia with the 4404th Rescue Squadron and quartered at Khobar Towers.  He worked as an aircraft hydraulics specialist.

91.    Plaintiff **Jason Lee Melvin** is a United States citizen.  At the time of the acts alleged herein, Mr. Melvin was a United States citizen and an Airman First Class in the U.S. Air Force stationed at Grand Forks Air Force Base in North Dakota and deployed to Dhahran, Saudi Arabia with the 4404th Security Police Squadron and quartered at Khobar Towers. He worked  in the security police squadron.

92.    Plaintiff **Flor De Luz Morales** is a United States citizen.  At the time of the acts alleged herein, Ms. Morales was a United States citizen and an Airman First Class in the U.S. Air Force stationed at Eglin Air Force Base in Florida and deployed to Dhahran, Saudi Arabia with the 58th Fighter Squadron and quartered at Khobar Towers.  She worked in aviation management.

93.    Plaintiff **Martina Ortiz** is a United States citizen.  She is the mother of plaintiff **Flor D. Morales**.

94.    Plaintiff **Morris Manuel Myers** is a United States citizen.  At the time of the acts alleged herein, Mr. Myers was a United States citizen and a Staff Sergeant in the U.S. Air Force stationed at RAF Lakenheath, UK and deployed to Dhahran, Saudi Arabia with the 48th Equipment Maintenance Squadron and quartered at Khobar Towers.  He worked as an aircraft armament specialist.

95.    Plaintiff **Sherry Darlene Byes** is a United States citizen.  She is the mother of plaintiff **Morris M. Myers**.

96.    Plaintiff **Elisha Jonathan Novell** is a United States citizen.  At the time of the acts alleged herein, Mr. Novell was a United States citizen and a Staff Sergeant in the U.S. Air Force stationed at Lackland Air Force Base in Texas and deployed to Dhahran, Saudi Arabia with the 4404th Security Police Squadron and quartered at Khobar Towers.

97.    Plaintiff **Mark Wayne O'Toole** is a United States citizen. At the time of the acts alleged herein, Mr. O'Toole was a United States citizen and a Senior Airman in the U.S. Air Force stationed at Barksdale Air Force Base in Louisiana and deployed to Dhahran, Saudi Arabia with the 4404th Transportation Squadron and quartered at Khobar Towers.  He was working as a vehicle maintenance specialist.

98.    Plaintiff **Stacey Lynn O'Toole** is a United States citizen.  She is the wife of plaintiff **Mark W. O'Toole.**

99.    Plaintiff **Kayla Lynn Kasten** is a United States citizen.  She is the daughter of plaintiff **Mark W. O'Toole.**

100.    Plaintiff **Kelsie Elaine O'Toole** is a United States citizen.  She is the daughter of plaintiff **Mark W. O'Toole.**

101.    Plaintiff **Eldred Earl Pailin** is a United States citizen.  At the time of the acts alleged herein, Mr. Pailin was a United States citizen and a Staff Sergeant in the U.S. Air Force stationed at Langley Air Force Base in Virginia and deployed to Dhahran, Saudi Arabia with the 4404th Maintenance Squadron and quartered at Khobar Towers.  He worked as an aircraft maintenance specialist.

102.    Plaintiff **Jeremy Lynn Parratt** is a United States citizen.  At the time of the acts alleged herein, Mr. Parratt was a United States citizen and an Airman First Class in the U.S. Air Force stationed at Shaw Air Force Base in South Carolina and deployed to Dhahran, Saudi Arabia with the 4404th Expeditionary Wing and quartered at Khobar Towers.   He worked as an egress systems technician.

103.    Plaintiff **Priscilla Ruth Bradley** is a United States citizen.  She is the mother of plaintiff **Jeremy L. Parratt**.

104.    Plaintiff **Amy Priscilla Hall** is a United States citizen.  She is the sister of plaintiff **Jeremy L. Parratt**.

105.    Plaintiff **Pascha Renee Payton** is a United States citizen.  At the time of the acts alleged herein, Ms. Payton was a United States citizen and an Airman First Class in the U.S. Air Force stationed at MacDill Air Force Base in Florida with the 6th Air Refueling Wing and deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers.  She worked as a command post controller.

106.    Plaintiff **Michael J. Montgomery Perfetti** is a United States citizen.  At the time of the acts alleged herein, Mr. Perfetti was a United States citizen and a Senior Airman in the

U.S. Air Force stationed at Eglin Air Force Base in Florida and deployed to Dhahran, Saudi Arabia with the 58th Fighter Squadron and quartered at Khobar Towers.

107.   Plaintiff **Rafael Rivera, Jr.,** is a United States citizen.  At the time of the acts alleged herein, Mr. Rivera was a United States citizen and a Senior Airman in the U.S. Air Force stationed at Patrick Air Force Base in Florida and deployed to Dhahran, Saudi Arabia with the 71rst Rescue Squadron and quartered at Khobar Towers.  He worked in administration.

108.   Plaintiff **David Charles Robinson** is a United States citizen.  At the time of the acts alleged herein, Mr. Robinson was a United States citizen and a Staff Sergeant in the U.S. Air Force stationed at Holloman Air Force Base in New Mexico with the 49th Security Forces Squadron and deployed to Dhahran, Saudi Arabia with the 4404th Provisional Wing and quartered at Khobar Towers.  He worked in perimeter security and fortification.

109.   Plaintiff **Trena Wynette Schmidt** is a United States citizen.  At the time of the acts alleged herein, Ms. Schmidt was a United States citizen and a Staff Sergeant in the U.S. Air Force stationed at Pope Air Force Base in North Carolina and deployed to Dhahran, Saudi Arabia with the 4404th Maintenance Squadron and quartered at Khobar Towers.  She was working as an aircraft structural maintenance specialist.

110.   Plaintiff **Michael Shawn Spencer** is a United States citizen. At the time of the acts alleged herein, Mr. Spencer was a United States citizen and a Senior Airman in the U.S. Air Force stationed at  Tyndall Air Force Base in Florida and deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers.  He worked as an aerospace ground equipment technician.

111.   Plaintiff **Talena Michelle Spencer** is a United States citizen.  She is the wife of plaintiff **Michael S. Spencer.**

112.    Plaintiff **Andre Louis Stanton** is a United States citizen.  At the time of the acts alleged herein, Mr. Stanton was a United States citizen and a Staff Sergeant in the U.S. Air Force stationed at Edwards Air Force Base in California with the 412th Operations Squadron and deployed to Dhahran, Saudi Arabia with the 4404th Maintenance Squadron and quartered at Khobar Towers.  He was working in air crew life support.

113.    Plaintiff **Billy Joe Stewart** is a United States citizen.  At the time of the acts alleged herein, Mr. Stewart was a United States citizen and a Master Sergeant in the U.S. Air Force stationed at Luke Air Force Base in Arizona and deployed to Dhahran, Saudi Arabia with the 4404th Wing and quartered at Khobar Towers.  He worked as the Chief Commercial Service Officer.

114.    Plaintiff **Stella Louise Thot** is a United States citizen.  She is the mother of Steven R. Kitis, a United States citizen and a member of the United States Air Force who was injured in the Khobar Towers bombing.  Mr. Kitis was a plaintiff in *Schooley v. Islamic Republic of Iran*, supra, and was awarded compensatory damages by this Court for the injuries he sustained in the Khobar Towers bombing.

115.    Plaintiff **Michael David Weimer** is a United States citizen.  He is the brother of Aaron R. Weimer, a United States citizen and a member of the United States Air Force who suffered severe emotional injuries in the Khobar Towers bombing. Aaron Weimer was a plaintiff in *Schooley v. Islamic Republic of Iran*, supra, and was awarded compensatory damages by this Court for the injuries he sustained in the Khobar Towers bombing.

116.    Plaintiff **Anthony John Whiting** is a United States citizen.  At the time of the acts alleged herein, Mr. Whiting was a United States citizen and a Staff Sergeant in the U.S. Air

Force stationed at Ellsworth Air Force Base in South Dakota, deployed to Dhahran, Saudi Arabia with the 28th Bomb Wing and quartered at Khobar Towers.  He was working as an electrician.

117.    Plaintiff **Robert Kenneth Young** is a United States citizen.  At the time of the acts alleged herein, Mr. Young was a United States citizen and a Senior Airman in the U.S. Air Force stationed at Cannon Air Force Base in New Mexico and deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers.

### B.  DEFENDANT

118.    Defendant Iran is a foreign state within the meaning of 28 U.S.C. § 1391(f)  and has been designated a state sponsor of international terrorism by the U.S. Department of State pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j)), Section 40 of the Arms Export Control Act (22 U.S.C. § 2780), and Section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371) continuously since January 19, 1984.  Iran provided material support and resources to Hezbollah, a politico-paramilitary terrorist organization, within the meaning of 18 § U.S.C. 2339A.   Iran is a foreign state within the meaning of 28 U.S.C. § 1391(f).

119.    Two divisions of Iran's government, the Iranian Ministry of Information and Security (MOIS) and the Islamic Revolutionary Guard Corps (IRGC) participated in the plan to attack Khobar Towers.

120.    MOIS is Iran's intelligence service and functions both within and beyond Iranian territory. MOIS, acting as an agent of Iran, performed acts within the scope of its agency, within the meaning of 28 U.S.C. § 1605A, that caused the events which gave rise to plaintiffs' injuries. Specifically, MOIS acted as a conduit for Iran's provision of funds, training and direction to

Hezbollah for its terrorist activities, including the actions relating to the bomb attack on the Khobar Towers complex of Dhahran, Saudi Arabia on June 25, 1996.

121.    IRGC is a non-traditional agency or instrumentality of Iran.  It is the military arm of a kind of shadow government answering directly to the Ayatollah and the mullahs who hold power in Iran. It is similar to the Nazi party's SA organization prior to World War II. It has its own separate funding sources, derived from confiscation of the assets of the former Shah of Iran in 1979, when the Shah was deposed.

122.    The IRGC, with its own separate ministry, has evolved into one of the most powerful organizations in Iran and functions as an intelligence organization, both within and beyond Iran's borders. The IRGC exerts considerable influence on the government policies of Iran.  It has become a powerful military instrument for defending and furthering Iran's Islamic fundamentalist revolution and is dedicated to the export of Islamic fundamentalist principles throughout the world through acts of terrorism.  The IRGC actively supports terrorism as a means of protecting the Islamic revolution that brought the Ayatollah to power in Iran in 1979.

123.    The IRGC, acting as an agent of Iran, performed acts within the scope of its agency - and within the meaning of 28 U.S.C. § 1605A and § 1605A note – in providing funds, training, and direction to Hezbollah for its terrorist activities, including the June 25, 1996 terrorist attack on Khobar Towers, as described below.

## IV.    STATEMENT OF FACTS

### *The Attack on Khobar Towers*

124.    The Khobar Towers was a residential complex in Dhahran, Saudi Arabia, which housed the coalition forces charged with monitoring compliance with U.N. Security Council resolutions.

125.    The United States' military presence in Saudi Arabia was with the consent of that host country.  It was part of a coalition of forces, primarily from the United States, Great Britain, and France that was charged with monitoring Iraq's compliance with United Nations Security Council resolutions enforcing the cease-fire that had brought an end to the 1991 "Desert Storm" ejection of Iraqi occupying forces from Kuwait.

126.    The deployment of U.S. troops to the region for Operation Southern Watch was considered a peacetime deployment within a friendly host country.

127.    The United States Air Force servicemembers of the 4404th Wing (Provisional) contributed the air component of Operation Southern Watch.  Of the more than 5,000 personnel of the 4404th Wing assigned to four countries, 2,300 American airmen were quartered in the American sector of Khobar Towers, just east of Dhahran Air Base, and operated from the flightline at King Abdul Aziz Air Base, also known as Dhahran Air Base.   Most of these servicemembers were serving 90-day rotation tours.

128.    At approximately ten minutes before 10 pm on Tuesday, June 25, 1996, a large gasoline tanker truck pulled up alongside the perimeter wall of the Khobar Towers complex. The driver jumped out, ran into a waiting car that had pulled up near the truck, and sped off.

129.     Security guards near the top of Building 131, the dormitory in Khobar Towers closest to the truck started to give warnings about the unusual vehicle location.   The truck exploded with great force within about 15 minutes. The investigation determined that the force of the explosion was the equivalent of 20,000 pounds of TNT. The Defense Department said that it was the largest non-nuclear explosion ever up to that time.

130.    The explosion sheared off the face of Building 131 and damaged every other building in the complex. Nineteen members of the United States Air Force were killed in the explosion, and hundreds of other Air Force members were injured.

### *Iranian Support and Sponsorship of the Attack*

131.    The attack on Khobar Towers was carried out by individuals recruited principally by a senior official of the IRGC, Brigadier General Ahmed Sharifi. Sharifi, who was the operational commander, planned the operation and recruited individuals for the operation at the Iranian embassy in Damascus, Syria. He provided the passports, the paperwork, and the funds for the individuals who carried out the attack.

132.    The truck bomb was assembled at a terrorist base in the Bekaa Valley in Lebanon which was jointly operated by the IRGC and by the terrorist organization known as Hezbollah. The individuals recruited to carry out the bombing referred to themselves as "Saudi Hezbollah," and they drove the truck bomb from its assembly point in the Bekaa Valley to Dhahran, Saudi Arabia.

133.    The terrorist attack on the Khobar Towers was approved by Ayatollah Khamenei, the Supreme leader of Iran at the time. It was also approved and supported by the Iranian Minister of Intelligence and Security at the time, Ali Fallahian, who was involved in providing intelligence security support for the operation. Fallahian's representative in Damascus, a man named Nurani, also provided support for the operation.

134.    Under Director Louis Freeh, the FBI conducted a massive and thorough investigation of the attack, using over 250 agents.

135.    Based on that investigation, an Alexandria, Virginia, grand jury returned an indictment on June 21, 2001, against 13 identified members of the pro-Iran Saudi arm of the

—

Hezbollah organization. The indictment's description of the plot to bomb the Khobar Towers complex frequently refers to direction and assistance from Iranian government officials.

136.     In addition, as a result of this investigation, the FBI also obtained a great deal of information linking the defendant to the bombing from interviews with six admitted members of the Saudi Hezbollah organization, who were arrested by the Saudis shortly after the bombing. These six individuals admitted to the FBI their complicity in the attack on the Khobar Towers, and admitted that senior officials in the Iranian government provided them with funding, planning, training, sponsorship, and travel necessary to carry out the attack on the Khobar Towers. The six individuals also indicated that the selection of the target and the authorization to proceed was done collectively by Iran, MOIS, and IRGC, though the actual preparation and carrying out of the attack was done by the IRGC.

137.     The FBI obtained specific information from the six about how each was recruited and trained by the Iranian government in Iran and Lebanon, and how weapons were smuggled into Saudi Arabia from Iran through Syria and Jordan. One individual described in detail a meeting about the attack at which senior Iranian officials, including members of the MOIS and IRGC, were present. Several stated that IRGC directed, assisted, and oversaw the surveillance of the Khobar Towers site, and that these surveillance reports were sent to IRGC officials for their review. Another told the FBI that IRGC gave the six individuals a large amount of money for the specific purpose of planning and executing the Khobar Towers bombing.

138.     In numerous cases for close to two decades, this Court has held Iran liable – as a foreign state sponsor of international terrorism, initially pursuant to 28 U.S.C. § 1605(a)(7) and subsequently pursuant to 28 U.S.C. § 1605A – for Hezbollah's terrorist acts of murder and mayhem. *See, e.g.*, *Flanagan v. Islamic Republic of Iran*, 190 F. Supp. 3d 138 (D.D.C. 2016);

*Valencia v. Islamic Republic of Iran*, 774 F. Supp. 2d 1 (D.D.C. 2010); *Rimkus v. Islamic Republic of Iran*, 575 F. Supp. 2d 181 (D.D.C. 2008); *Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006); *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40 (D.D.C. 2006); *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d (D.D.C. 2002); *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78 (D.D.C. 2002); *Wagner v. Islamic Republic of Iran*, 172 F. Supp.2d 128 (D.D.C. 2001); *Jenco v. Islamic Republic of Iran*, 154 F. Supp. 2d 27 (D.D.C. 2001); *Polhill v. Islamic Republic of Iran*, No. 00-CV-1789 TPJ, 2001 U.S. Dist. LEXIS 15322, 2001 WL 34157508 (D.D.C. Aug. 23, 2001); *Sutherland v. Islamic Republic of Iran*, 151 F. Supp. 2d 27 (D.D.C. 2001); *Anderson v. Islamic Republic of Iran*, 90 F. Supp. 2d 107 (D.D.C. 2000), and *Higgins v. Islamic Republic of Iran*, No. 1:99-CV-00377 CKK, 2000 U.S. Dist. LEXIS 22173, 2000 WL 33674311 (D.D.C. Sept. 21, 2000).

139.    Specifically, *Aceto v. Islamic Republic of Iran*, No. CV 19-464 (BAH), 2020 U.S. Dist. LEXIS 22084, 2020 WL 619925 (D.D.C. Feb. 7, 2020); *Schooley v. Islamic Republic of Iran*, No. CV 17-1376 (BAH) 2019 U.S. Dist. LEXIS 108011, 2019 WL 2717888 (D.D.C. June 27, 2019); *Akins v. Islamic Republic of Iran*, 332 F. Supp. 3d 1 (D.D.C. 2018); *Valencia*, 774 F. Supp. 2d 1; *Heiser*, 466 F. Supp. 2d 229; *Blais*, 459 F. Supp. 2d 40; and *Rimkus*, 575 F. Supp. 2d 181 also arose out of the bombing of Khobar Towers and dealt with identical issues regarding the liability of Iran for the attack on Khobar Towers.  In those cases, the Court found that "the Khobar Towers bombing was planned, funded, and sponsored by senior leadership in the government of the Islamic Republic of Iran; the IRGC had the responsibility of working with Saudi Hezbollah to execute the plan, and the MOIS participated in the planning and funding of the attack," *See also Schooley*, 2019 LEXIS 108011 at * 284-85; *Aceto,* 2020. LEXIS 22084 at

*7; *Heiser*, 466 F. Supp. 2d at 265; *Blais*, 459 F. Supp. 2d at 48; *Rimkus,* 575 F. Supp. 2d at 195; and *Valencia,* 774 F. Supp. 2d. at 11-12.

140.    Iran's motive in providing material support to Hezbollah in carrying out the bombing of Khobar Towers was to intimidate and terrorize the U.S. forces deployed to Saudi Arabia, the injured servicemembers' immediate family members, and the international community.

141.    Iran is collaterally estopped from denying that it is liable for Hezbollah's actions, particularly in regard to Hezbollah's bombing of Khobar Towers.

## V.    INDIVIDUAL ALLEGATIONS

142.    The Plaintiffs who are injured airmen who survived the Khobar Towers bombing (hereinafter collectively known as "the Surviving Injured Plaintiffs") include the following individuals: David J. Ackley, Jr., Rita G. Ackley, Sandra J. Beneway, Lisa M. Cafiero, Jason D. Carley, Manuel J. Carrasco, Dallas W. Croft, Craig J. Dick, Jason B. Dixon, Carrie L. Dobos, Christopher O. Doggett, Bryan W. Fox, John P. Garcia, Jr., Steven D. Garcia, Carl R. Hamilton, Jr., Jeffrey L. Hill, Gregory M. Hillabrant, Steven Jaronsky, Richard R. Jiron, Roger K. Kaalekahi IV, David A. Krueger, David W. Long, Sr., John G. McCarthy, Jason L. Melvin, Flor D. Morales, Morris M. Myers, Jr., Elisha J. Novell, Mark W. O'Toole, Eldred E. Pailin, Jeremy L. Parratt, Pasha R. Payton, Michael J. Perfetti, Rafael Rivera, Jr., David C. Robinson, Trena W. Schmidt, Michael S. Spencer, Andre L. Stanton, Billy J. Stewart, Anthony J. Whiting, and Robert K. Young.

143.    The Plaintiffs who are immediate family members of the Surviving Injured Plaintiffs (hereinafter collectively known as "the Plaintiffs who are immediate family members

of the Surviving Injured Plaintiffs") include the following individuals: David J. Ackley, Jr., Jane

F. Boyle, David J. Ackley, Sr., Scott H. Ackley, Sherry A. Bessette, Rita G. Ackley, Donald

Stidham, Aleatha C. Harris, Mari E. DeLacy, Marshall L. Beneway, Barbara A. Crocco, Carol

Bruns-Beneway Smith, Christina M. Mattingly, Kirsten J. Carrasco, Juli A. Croft, Dallas T.

Croft, Andrew K. Croft, Kathleen A. Dick, Craig W. Dick, Brett M. Dick, Cory P. Dick, Donna

J. Dixon, Edward C. Dobos, Molly A. Dobos, Erika L. Rush, Kasey D. Philips, Haley I. Dobos,

Anne M. French, Charles D. French, Tina M. Judge, Brenda J. French, Dena J. DeJoe, Sherrie K.

McBride, Alyxandra L. Doggett, Sandra L. Skinner, Sylvetta E. Fox, Walter W. Fox, Jr.,

Virginia R. Garcia, John P. Garcia, Sr., Michael Garcia, Karen M. Rainville, Dennis A.

Rainville, Lisa M. Glenn, Autumn Hamilton Lyon, Adrienne L. Fulton, Jane M. Hillabrant,

Stephen R. Hillabrant, Elsie Lombardo, Brandy O. Jiron, Kimberly J. Jiron, Randall R. Jiron,

Valerie M. Kaalekahi, Kiana K. Kaalekahi, Cynthia A. Long, David W. Long, Jr., Martina Ortiz,

Sherry D. Byes, Stacey L. O'Toole, Kayla L. Kasten, Kelsie E. O'Toole, Priscilla R. Bradley,

Amy P. Hall, and Talena M. Spencer.

144.    The Plaintiffs who are immediate family members of injured airmen who were

plaintiffs in *Schooley v. Islamic Republic of Iran*, 17-1376 (D.D.C. 2019) (hereinafter

collectively known as "the Plaintiffs who are immediate family members of the Surviving

Injured *Schooley* Plaintiffs") include the following individuals: Philip W. Brown, Karen M.

Voie, Ingrid K. Simpson, Allia M. Coleman, Lana L. Coleman-Wiggins, Demetrius Coleman,

Charlie E. Coleman, Cornelius Coleman, Christopher M. Johnson, Stella L. Thot, and Michael

D. Weimer.

145.    On June 25, 1996, members of Hezbollah by use of an explosive device as above

described, intentionally, willfully, wrongfully, violently and forcefully inflicted physical and/or

mental injuries upon each and every one of the Surviving Injured Plaintiffs, who at the time were all members of the United States Air Force, causing physical injury, pain and suffering, extreme mental anguish, and past and future economic losses including medical expenses, lost income, and loss of earning capacity.

146.    The members of Hezbollah, as above alleged, intentionally and willfully placed each and every one the Surviving Injured Plaintiffs in fear and imminent apprehension of harm as a direct result of their actions.

147.    Each and every one of the Surviving Injured Plaintiffs endured extreme mental anguish, and/or physical pain and suffering, suffered emotional injury and loss, sustained economic losses, suffered the loss of the company of their family and friends, and were subjected to injury, pain, discomfort and inconvenience and are entitled to recover damages on the causes of action set forth herein.

148.    Each and every one of the Plaintiffs who are immediate relatives of the Surviving Injured Plaintiffs endured extreme mental pain and anguish, suffered emotional injury and loss, and sustained past and future economic losses including medical expenses, lost income, and loss of earning capacity, and are entitled to recover damages on the causes of action set forth herein.

149.    Each and every one of the Plaintiffs who are immediate family members of the Surviving Injured *Schooley* Plaintiffs endured extreme mental pain and anguish, suffered emotional injury and loss, and sustained past and future economic losses including medical expenses, lost income, and loss of earning capacity, and are entitled to recover damages on the causes of action set forth herein.

150.    Specific allegations for each Plaintiff are found below and are incorporated herein by reference.

151.    Plaintiff **David J. Ackley, Jr.** was in Building 126 at Khobar Towers at the time of the bombing.  He was in the first floor dormitory suite he shared with his wife, plaintiff **Rita G. Ackley**.  They had been married for eight months and were deployed to Saudi Arabia together as part of the 10th Intelligence Squadron.  They had just left the day room and were in their room, sitting on the bed and talking, when there was a bright flash of light and a huge explosion.  The windows burst in, spraying glass everywhere, and the building shook violently.  David Jr. thought they were being bombed or shot and he feared for Rita's life.  He sustained cuts and lacerations from shattered glass all over his body.  He received first aid buddy care for his injuries.  He was awarded the Purple Heart for his injuries and the Armed Forces Expeditionary Medal for his services to Operation Southern Watch in Saudi Arabia.  He developed post-traumatic stress disorder (PTSD) as a result of the bombing and for he had nightmares, insomnia and would react to loud noises.  He is still in the Air Force and is a Senior Airman in the 10th Intelligence Squadron, Air Intelligence Agency.

152.    Plaintiff **Jane F. Boyle**, the mother of plaintiff **David J. Ackley, Jr.**, was listening to the radio while driving home from work when she heard on the news that Khobar Towers had been bombed.  Jane knew that her son, David Jr., and her daughter-in-law, plaintiff **Rita G. Ackley**, were stationed there.   She was in shock and had to pull off to the side of the road to catch her breath.  After arriving home she turned on the television news and saw the large blast crater and a building at Khobar Towers with one side blown off.  It was unbearable for her to wait to learn whether David Jr. and Rita had survived.   Four hours later her son called to let her know that he and Rita were injured but had survived.  Jane was worried and in distress for weeks until her son returned to the U.S.

32

153.    Plaintiff **David J. Ackley, Sr.,** the father of plaintiff **David J. Ackley, Jr.,** learned about the attack when a friend told him it was on the television news.  He was shocked and horrified but he was not able to get any information about his son and daughter-in-law.  He tried staying home from work but had to return just to keep his mind off things.  Finally, David Jr. was able to call him to let him know that he and his wife Rita had been injured but were alive.  David Sr. was so choked up he couldn't speak for several minutes. David Sr. had nightmares every night for months.  He was able to reunite with his son only three or four months later when David Jr. returned home.  He still has nightmares when he sees similar events on television.

154.    Plaintiff **Scott H. Ackley**, the brother of plaintiff **David J. Ackley, Jr.,** was stationed on the U.S. Navy ship USS Guam on June 25, 1996 when there was an announcement that Khobar Towers had been bombed and that the USS Guam was headed to the area to provide support.  Scott was unable to contact his brother David Jr. and for many days did not know if he was alive.  Scott was in anguish with worry for his brother's safety when finally, on July 7, he was able to make contact with their father, David Sr., who told him that David Jr. and his wife, plaintiff **Rita G. Ackley**, were injured but alive.  To this day every time he hears about the bombing or similar attacks it brings back the same feeling when David Jr. was almost taken from their family.

155.    Plaintiff **Sherry A. Bessette**, the sister of plaintiff **David J. Ackley, Jr.**, first learned about the bombing when she was watching the news on television after returning home from work.  She called her mother to check if her brother David Jr. and her sister-in-law, plaintiff **Rita G. Ackley**, were deployed at Khobar Towers.  Sherry was horrified when her mother told her that David Jr. and Rita were stationed there.  Sherry was in fear for her brother's life while waiting for more information. Four or five hours later, her mother called with the news that

David Jr. was alive but injured.  Later, her mother called with the news that David Jr. would be sent home.  When she sees news of a mass shooting or terrorist attack on the news, she remember the fear she felt when she saw the news of the Khobar Towers bombing and not knowing whether David Jr. had survived.

156.    Plaintiff **Rita G. Ackley** had just entered her first floor room in her dormitory in Building 126 of Khobar Towers with her husband, plaintiff **David J. Ackley, Jr**., at the time of the attack.  They had been married for eight months and were deployed together to Saudi Arabia as part of the 10th Intelligence Squadron. They were sitting on the bed talking when she heard an incredibly loud explosion.  Window glass shattered all over the room and the building was shaking.  She thought the building was about to collapse and she feared for David Jr.'s life.  She sustained lacerations from glass shrapnel.  In the chaos, they evacuated the building.  She received first aid buddy care for her injuries. She was awarded the Purple Heart for her injuries and the Armed Forces Expeditionary Medal for her services to Operation Southern Watch.  To this day, unexpected loud noises startle her and bring her back to the day of the bombing.  She remained in the Air Force until 2002 and attained the rank of Senior Airman.

157.    Plaintiff **Donald Stidham**, the father of plaintiff **Rita G. Ackley**, first heard about the bombing on the 6 o'clock news.  He was in shock and in fear for Rita's life. The wait for news about his daughter and his son-in-law, plaintiff **David J. Ackley, Jr.** , was unbearable, and he experienced extreme distress and anxiety.  It was eight hours before he knew that Rita and his son-in-law, plaintiff David J. Ackley, Jr., had survived but were injured.  Donald was anxious and worried for Rita's safety until he was reunited with his daughter in September 1996.

158.    Plaintiff **Aleatha C. Harris**, the sister of plaintiff **Rita G. Ackley**, was watching the news when she saw the footage of the Khobar Towers buildings reduced to rubble.

Horrified, she realized that her sister Rita and her brother-in-law, plaintiff **David J. Ackley, Jr.** were deployed there.  She was in anguish for eight hours before learning that Rita and David Jr. had survived but were injured in the bombing.  Aleatha was relieved that Rita had survived, but she was still worried for her sister's safety until Rita returned home in September 1996.

159.    Plaintiff **Sandra J. Beneway** had returned from the gym to her sixth floor quarters in the Civil Engineer's dorm in Building 133 in Khobar Towers at the time of the bombing.  She was sitting on a couch facing the sliding glass balcony doors in the common area when the bomb detonated.  The blast blew in the doors and threw the furniture across the room. She was pelted by glass shrapnel and debris and a chair hit her in the abdomen.  The flying glass and debris caused severe injuries including trauma to the left eye; a severed left optic nerve; a fractured left eye orbit; glass fragments in her right eye; a broken nose; a dislocated left wrist tendon; glass fragments penetrating the sinus cavity; and lacerations from glass fragments and debris to the left side of her face, nose, and mouth. She could not see and her roommates helped her down the six flights of stairs, where a group of civil engineers carried her to the medical clinic.

160.    Sandra was immediately triaged and taken by ambulance to a local hospital, transferred to a larger hospital, and then aeromedically evacuated to the U.S. military hospital, Landstuhl Regional Medical Center in Germany.  She was then flown to Walter Reed Army Medical Center in Washington, D.C., where she was hospitalized for six weeks.  Surgeons performed enucleation surgery to remove her injured left eye to prevent sympathetic ophthalmia from causing damage to her healthy right eye.  Over the next three years, Sandra would have an additional ten surgeries at Walter Reed for eye and facial reconstruction, sinus cavity repair, and to repair her wrist tendon. She wears a prosthetic left eye, has permanent disfiguring scars on the

left side of her face, and still has pain and limited movement of the fingers of her left hand. She developed depression and PTSD as a result of the bombing, for which she still receives treatment. Sandra's career prospects have been negatively impacted by her injuries. Sandra was awarded the Purple Heart for her injuries. She was given a disability rating by the V.A. Sandra attained the rank of Major before retiring from the Air Force.

161. Plaintiff **Mari E. DeLacy**, the wife of Plaintiff **Sandra J. Beneway**, was at their home in South Carolina near Charleston Air Force Base at the time of the Khobar Towers bombing. As Mari was arriving home from work, Sandra's sister Barbara called and told Mari there had been a bombing at Khobar Towers, and told her to turn on CNN. Barbara told Mari that she had recognized Sandra's hand hanging over a hospital stretcher during a news clip. Mari was horrified and was desperate for information about Sandra. She was informed by Charleston Air Force Base that there was one fatality at Khobar Towers from Charleston Air Force Base, and that Sandra was one of two airmen from Charleston deployed to Saudi Arabia. Mari was in shock and was terrified, not knowing whether Sandra had been killed in the bombing.

162. The day after the bombing, Sandra was able to leave a voicemail message for Mari from a local a hospital in Saudi Arabia that she had survived the bombing. When Mari was finally able to talk to Sandra on the phone, Sandra downplayed her injuries. Mari rushed to Walter Reed Army Medical Center in Washington, D.C., where Sandra was being transported from Germany. When Mari saw Sandra in the hospital she was shocked at the severity of Sandra's injuries, including a severe injury to her left eye, facial lacerations, and bruising across her face and stomach. While Mari was visiting Sandra, the physician recommended that Sandra's injured left eye be removed to prevent damage to Sandra's right eye. Mari was shocked and distressed that Sandra would lose her left eye. Mari stayed with Sandra during Sandra's six

week hospitalization at Walter Reed and returned there with her many times over the next several years for subsequent eye surgeries. Sandra's severe physical and emotional injuries permanently changed their relationship and Mari has suffered from anxiety and depression as a result. Mari continues to experience the effects of Sandra's injuries.

163.     Plaintiff **Marshall L. Beneway**, the brother of plaintiff **Sandra J. Beneway**, first learned of the Khobar Tower bombings when his sister, plaintiff **Barbara A. Crocco**, who had seen the news about the attack on television, called him around 6:00 pm on June 25, 1996. Marshall was shocked and devastated and in fear for her life. Marshall had to tell his mother that Sandra was in a bombing in Saudi Arabia, so that she wouldn't see it for the first time on television. A few days later Marshall learned through the Red Cross that Sandra had survived but was severely injured. Marshall was relieved that Sandra was alive but devastated that she was injured. Several days later, Marshall took time off of work and drove to Walter Reed Army Medical Center in Washington, D.C. so he could be there when Sandra was flown in from the hospital in Germany. Marshall suffered extreme distress when he saw how badly Sandra had been injured. In the years since, Marshall has suffered as a result of watching his sister suffer physical and mental pain as a result of the injuries she sustained in the bombing. He continues to worry about her health and well-being.

164.     Plaintiff **Barbara A. Crocco**, the sister of Plaintiff Sandra J. Beneway, first learned of the attack the evening of June 25, 1996 from the local news. The news showed people being transported on stretchers and recognized Sandra's hands. Barbara was shocked and anguished and in fear for Sandra's life. Barbara called their brother Marshall to tell him what had happened. Barbara tried to get information from the Red Cross to no avail. Finally they received a phone call from a colonel who explained that Sandra had survived but had sustained

major injuries and had been evacuated to Germany for medical care. Barbara was shocked to see Sandra with such severe injuries.  She still misses the activities they used to enjoy together. She constantly worries about Sandra's health.

165.    Plaintiff **Carol Bruns-Beneway Smith**, the sister of Plaintiff Sandra J. Beneway. found out about the attack on Khobar Towers when their father called and told her about the bombing. She was distraught waiting to find out if Sandra had survived.  The next day the family found out that Sandra had been injured. Carol feared for Sandra's life until her sister returned to the U.S.  Carol continues to suffer from the effects of Sandra's injures and is constantly worried about Sandra's health.

166.    Plaintiff **Philip W. Brown** is the father of Kyle W. Brown, a member of the United States Air Force and a plaintiff in *Schooley v. Islamic Republic of Iran*, supra.  Kyle was seriously injured in the Khobar Towers bombing, including multiple lacerations that caused extensive bleeding. Kyle was treated at a local hospital in Saudi Arabia and then aeromedically evacuated to the U.S. military hospital, Landstuhl Regional Medical Center, in Germany. Kyle developed PTSD as a result of the bombing and experienced a change in his personality from happy and relaxed to  withdrawn and irritable.

167.    Philip was at work early on the morning of June 25, 1996 when he heard on the radio that Khobar Towers had been bombed.  He knew his son was stationed in Saudi Arabia and was in the barracks at Khobar Towers.  It wasn't until 11:00 am that he received a phone call from his ex-wife, Kyle's mother, that Kyle had been quite badly injured and was being flown to a hospital in Germany.  He was distraught waiting for more information about Kyle.  The next few days were agonizing.  The stress caused him to experience very high blood pressure and he had to take medication.  He couldn't sleep and would wake up in a cold sweat from dreaming of

Kyle being blown up.  It was another three days before he heard from his ex-wife that Kyle was on his way back to the U.S. and had hundreds of stitches and had been full of glass fragments. He wasn't reunited with Kyle until October.  Philip continues to be worried for Kyle's well-being as a result of his injuries and PTSD.

168.    Plaintiff **Karen M. Voie** is the mother of Kyle W. Brown, a member of the United States Air Force and a plaintiff in *Schooley v. Islamic Republic of Iran*, supra. Ms. Voie was on her way home from work late at night when she heard the news about the bombing in Saudi Arabia over the radio.  In the early morning she was awoken by Kyle's wife Amanda calling to tell her that Kyle had been in the bombing, but that they didn't know what had happened to him.  She was in shock and in fear for Kyle's life.  Waiting for news about Kyle was unbearable and Karen was in a daze.  She couldn't sleep and was desperate for more information about Kyle. Finally, Amanda called to let her know that Kyle had survived but had sustained injuries.  When Kyle was able to call, she was happy to hear his voice and was relieved that Kyle was alive but she continued to be extremely  anxious about his safety until she was reunited with him in July.  Karen was shocked to see Kyle's scars and to learn how badly he had been injured. To this day, Karen experiences great emotional distress when she remembers this time and continues to be concerned for Kyle's well-being.

169.    Plaintiff **Ingrid K. Simpson** is the sister of Kyle W. Brown,  a member of the United States Air Force and a plaintiff in *Schooley v. Islamic Republic of Iran*, supra.  Ms. Simpson grew up very close to Kyle and he was a role model for her. She was fourteen years old when Kyle was in the Khobar Towers bombing. She first learned of the attack from the local news channel.  She didn't realize that her brother was deployed there until a news crew arrived at the house to interview her and her family.  Ingrid was tormented with not knowing if she would

ever see Kyle again.  When she was finally reunited with her brother she was shocked by the severity of his injuries and to see the scars all over his head and scalp.  Ingrid continues to be worried for Kyle's well-being as a result of his injuries and PTSD.

170.   **Lisa M. Cafiero** was quartered in a civilian complex near Khobar Towers at the time of the bombing.  When the bomb detonated she could hear and feel the explosion.  She rushed to the air base, where she found ambulances, emergency vehicles, and chaos.  She gained access to Khobar Towers at dawn, where she witnesses mass casualty and found patched-up, wounded people everywhere.  She found the area covered in blood and pieces of flesh and body parts were strewn around the affected dorms.  She worked around the clock for five days ensuring that injured people were cared for and coordinating supplies.  She trained fifty-one airmen to act as the pall bearers and honor guard for the funeral service for the nineteen servicemembers who were killed in the bombing ad ensured the caskets were loaded onto the C-5 aircraft.  For the next four months she continued working non-stop at Khobar Towers including spearheading a clean-up program, rebuilding living quarters, and closing down Khobar Towers, while working in 120° – 135° F heat and under conditions of ongoing security threats.  She was directly exposed to the buildings and chaos where people had been severely injured and killed.  Ms. Cafiero was awarded the Air Force Achievement Medal for Outstanding Achievement for her services after the bombing.

171.   Lisa developed PTSD, Gulf War Illness, and fibromyalgia as a result of her experiences at Khobar Tower, which led to her early retirement. To this day, as a result of the PTSD resulting from the bombing, she suffers from insomnia, nightmares, anxiety, and hypervigilance, and cannot be in crowds.  She was given a disability rating by the V.A.

172.     Plaintiff **Christina L. Mattingly**, the daughter of plaintiff **Lisa M. Cafiero**, was 14 years old at the time of the bombing.  She was at home and learned about the bombing on the television news.  A few hours later, her mother called to let them know she had survived. The stress caused Christina to suffer from depression and PTSD and she could barely speak or eat. Since her mother had to stay at Khobar Towers to complete the clean-up and closing down of Khobar Towers, Christina was not reunited with her mother until October 1996. Christina eventually left her job to became the primary caregiver for her mother and continues  to  suffer from depression and anxiety.

173.     Plaintiff **Jason D. Carley** was in his fourth floor dormitory in Building 129 in Khobar Towers and getting ready for bed at the time of the bombing. Building 129 was directly behind Building 131, the building closest to the blast site. He was in the day room saying good night to his friends when the bomb detonated. The blast threw him into a concrete wall and he lost consciousness.  He was showered with broken glass from the sliding glass door causing head to toe lacerations. When he came to, he was bleeding from both ears and his eyes were burning from broken glass shrapnel.  In the chaos, he treated himself with self-aid.  Despite his injuries, he helped other injured airmen at triage before he sought treatment at the makeshift triage at the Desert Rose chow hall and at the Khobar Towers clinic. He assisted with the clean-up and found body parts in the rubble of the buildings.

174.     As a result of the attack, Jason sustained a concussion and traumatic brain injury, injuries to his right eye, ruptures of both ear drums, hearing loss, tinnitus, multiple lacerations to his face from glass shrapnel, trauma to his back, and PTSD.  Jason required surgery on his right eye when he returned to the U.S. He still suffers with permanent vision loss, hearing loss, tinnitus, severe back and joint pain, permanent scars, and PTSD with nightmares, insomnia, and

anxiety, for which he continues to receive treatment.  He was awarded the Purple Heart for his injuries.  He attained the rank of Technical Sergeant before his recent retirement. He has applied for disability from the VA.

175.    Plaintiff **Manuel J. Carrasco** was in his dormitory at Khobar Towers at the time of the bombing.  He had just finished watching a movie when the bomb detonated. He was blown against the wall and he slid to the floor.  He sustained severe lacerations from shattered glass including a severed brachial artery. He picked himself up and took ten steps before collapsing and going into shock from blood loss.  He was taken to a local hospital in Dhahran for surgery to reconstruct his artery and suture his wounds.  After four days he was taken to a second hospital for four days and was aeromedically evacuated to the U.S. military hospital, Landstuhl Regional Medical Center, in Germany.  Three days later he was flown to Walter Reed National Military Medical Center.  After returning to the U.S., he underwent multiple surgeries over the next two years.

176.    As a result of the bombing, Manuel sustained a severed right brachial artery; lacerations to the nerves in his arm, right axillary region, right thoracic wall, and to his torso, face, ear, and knee; permanent scars; and PTSD resulting in depression and personality changes, for which he still receives treatment. Two fingers on his right hand developed gangrene as a result of his injuries and required amputation. He still has no use of his right arm and right hand, and he still experiences pain from his injuries. He was awarded the Purple Heart for his injuries and the Meritorious Service Medal.  His injuries have limited his career prospects.  He was given a disability rating by the V.A.  He attained the rank of Technical Sergeant before his retirement.

177.    Plaintiff **Kirsten I. Carrasco**, the wife of Manuel J. Carrasco, first learned of the bombing on June 25, 1996 when she returned home from work and saw the news of the bombing

on CNN.  She worried that her husband might be involved and she checked her answering machine.  There were no messages so she called her husband's Air Force base in the U.S. but nobody had information for her.  She began to panic.  For two days she waited for news about her husband.  The only information came from CNN and other television news.  On the Thursday after the bombing Manuel was able to call from a hospital in Saudi Arabia.  Manuel was injured and in pain but Kirsten was relieved to finally hear his voice.  Kirsten flew out to Walter Reed Hospital a few days later to be there when he was flown there from Germany.  The next day they took a medical flight home to Vandenberg Air Force Base in California.  When Manuel returned home he needed a lot of care and Kirsten took time off work to care for him.

178.    Plaintiff **Allia M. Coleman** is the mother of Artis R. Coleman, Sr., a member of the United States Air Force who was seriously injured in the Khobar Towers bombing and who was a plaintiff in *Schooley v. Islamic Republic of Iran*, supra.  Artis was injured when a ceiling collapsed on him, knocking him unconscious.  He subsequently suffered two aneurisms in 1997 as a result of his injuries.   Allia first learned of the attack on the television news.  Terrified for Artis Sr., she prayed for her son and the other soldiers.  Several days after the attack she received a call saying her son Artis Sr. had been injured in the bombing.  It was several months before Artis Sr. was able to come home and she could see him.  She was worried day and night.  After Artis was hospitalized after suffering a devastating aneurism, Allia went to help take care of him.  The doctors told her the survival rate was slim.  He went through several surgeries and was never able to work again.  Allia was devastated. It was hard for Allia to see her son give up his career of being an airman and she thinks about how his life would have been different if he hadn't been in the attack.

179.    Plaintiff **Lana L. Coleman-Wiggins** is the older sister of Artis R. Coleman, Sr.,

a member of the United States Air Force who was seriously injured in the Khobar Towers

bombing and who was a plaintiff in *Schooley v. Islamic Republic of Iran*, supra.  Lana found out

that Artis was in the attack on Khobar Towers when her sister Demetrius called her.  Lana was in

panic for four days, not knowing whether Artis Sr. was safe. When Artis  Sr. was hospitalized

with an aneurism in 1997, Lana was devastated to see Artis in the hospital bed hooked up to

machines and tubes.  Artis could not talk or respond to her.  Lana took four weeks off work to be

with her brother in the hospital.   She was in distress not knowing if he would live or die.  The

stress exacerbated her high blood pressure.

180.    Plaintiff **Demetrius Coleman** is the sister of Artis R. Coleman, Sr.,  a member of

the United States Air Force who was seriously injured in the Khobar Towers bombing and who

was a plaintiff in *Schooley v. Islamic Republic of Iran*, supra.   She first learned of the bombing

on television news.  While the family waited for several days to learn if Artis Sr. had survived

the bombing,  Demetrius worried day and night.  She was praying and could not sleep at night

without lying awake wondering whether her brother would make it back alive.  After the attack

when Artis Sr. was hospitalized for the aneurisms caused by the blast, Demetrius felt devastated.

When they brought Artis home from the hospital Demetrius did what she could to support him.

She feels that the bombing caused Artis Sr.'s health problems and ended his career at a young

age.   She still gets upset when she hears about bombings on the news.

181.    Plaintiff **Charlie E. Coleman** is the brother of Artis R. Coleman, Sr..,  a member

of the United States Air Force who was seriously injured in the Khobar Towers bombing and

who was a plaintiff in *Schooley v. Islamic Republic of Iran*, supra.   Charlie was in the military

and stationed in Germany at the time of the Khobar Towers bombing.  A few days after the

attack, Charlie's family called and told him that his brother Artis Sr. had been injured in a bombing in Saudi Arabia. Charlie was in shock and feared for his brother's safety, For a month or more, he had few details of Artis Sr.'s injuries. Since Charlie was stationed in Germany, he was not reunited with his brother until he received leave from the military in 1997. Charlie paid for his flight home to the U.S. to visit his brother. Charlie suffered enormous anxiety from seeing Artis Sr.'s injuries and from watching him struggle with PTSD caused by the bombing. Charlie was devastated when Artis Sr. was hospitalized in 1997 with two aneurisms caused by the injuries he had sustained in the blast. As a servicemember himself, Charlie was distressed when Artis Sr.'s injuries from the Khobar Towers bombing forced him to leave the Air Force. To this day, Charlie is constantly worried about his brother's health and well-being.

182.    Plaintiff **Cornelius Coleman** is the brother of plaintiff Artis Coleman, Sr., a member of the United States Air Force who was seriously injured in the Khobar Towers bombing and who was a plaintiff in *Schooley v. Islamic Republic of Iran*, supra. Cornelius first learned of the attack on Khobar Towers when his sister called to tell him. He felt unbearable anxiety for several days until they learned that Artis Sr. had survived but had been injured. When Artis was hospitalized with an aneurism, Cornelius was anguished to see his brother in the hospital fighting for his life. Cornelius took a month of family leave from work to be with Artis in the hospital and to support him. Cornelius cannot get out of his mind the sight of his brother laying in the hospital bed hooked up to tubes.

183.    Plaintiff **Dallas W. Croft** was watching television and eating dinner in the day room of his dormitory on the fourth floor, east bay of Building 126 at Khobar Towers at the time of the bombing. He saw the lights flicker and the curtains sucked out of the window. The blast threw him into the kitchen area and knocked his head against the wall, causing him to lose

consciousness. He sustained severe lacerations from broken glass. Despite his injuries he evacuated people from damaged buildings, rendered first aid to the injured, and transported them to triage. After several hours of helping others, a co-worker cleaned and bandaged his wounds and he received treatment at the triage area at the Desert Rose chow hall. He was awarded the Purple Heart for his injuries and the Air Force Achievement Medal for Outstanding Achievement with Valor for assisting the injured.

184.    As a result of the bombing he sustained lacerations from broken glass to his head, arm, and leg; a concussion and a traumatic brain injury; and PTSD with nightmares, flashbacks, and anxiety, for which he has received treatment. He still suffers from headaches, insomnia, and PTSD. He was awarded the Purple Heart for his injuries. He was given a disability rating by the V.A. He attained the rank of Chief Master Sergeant before his retirement.

185.    Plaintiff **Juli A. Croft**, the wife of plaintiff **Dallas W. Croft**, learned about the bombing when she got home after being out with the children all day. Juli was also on active duty in the Air Force. She came home to several phone messages from her husband's leadership but the messages were vague. She finally received a call from her husband about ten hours after the bombing. She still did not know the extent of his injuries. He had actually left a message but there were so many messages she didn't get to hear it until later. She was not reunited with him until his deployment was over, about 75 days later. While she waited for him to come home she felt incredible stress and worry for his safety and was fearful there would be another attack.

186.    Plaintiff **Dallas T. Croft**, the son of plaintiff **Dallas W. Croft**, was two and a half years old at the time of the bombing. Although he does not have memories of the time of the bombing, he suffered emotional distress growing up with his father managing with the symptoms

of PTSD resulting from the bombing.  His father would have a quick temper or fall into a depression or distance himself from the family.  He has joined the Air Force himself.

187.    Plaintiff **Andrew K. Croft**, the son of plaintiff **Dallas W. Croft**, was eight months old at the time his father was injured in the Khobar Towers bombing.  As he grew up, his father's PTSD impacted Andrew.  His father had flares of temper and would avoid crowds and gatherings. When Andrew became a teenager he learned more about PTSD and how his father's experience in the bombing affected him.  Like the rest of his family, Andrew has joined the Air Force himself.

188.    Plaintiff **Craig J. Dick** was patrolling in a Humvee vehicle near Building 131 in Khobar Towers at the time of the bombing.  He heard a security alert on his radio and rushed in his vehicle to Building 131, the site of the bombing, warning several airmen to evacuate the area. He pulled up to Building 131 and was running to the rear entrance when the bomb exploded.  He was thrown fifty feet and lost consciousness.  The shock wave was so powerful it blew off his uniform.  Volunteers created a make-shift litter using sheets to move him to an ambulance to take him to a local hospital. After several days of treatment there, he was aeromedically evacuated to the U.S. military hospital, Landstuhl Regional Medical Center, in Germany. He was then aeromedically evacuated  to Holloman Air Force Base in New Mexico for further surgery and treatment.

189.    As a result of the bombing Craig sustained a concussion, a pleural effusion, ruptures of both ear drums that required eardrum replacement surgery, multiple lacerations from glass shrapnel including lacerations to his left ear, cuts and abrasions all over his body, retained metal shrapnel in his left foot that required surgical removal when he returned to the U.S., and small shrapnel retained in his body.  To this day, he suffers from permanent hearing loss and

tinnitus in both ears, permanent scars, and shrapnel retained in his body.  He was awarded the Purple Heart for his injuries and was given a disability rating by the V.A.

190.   Plaintiff **Kathleen A. Dick**, the mother of plaintiff **Craig J. Dick**, first learned of the attack on Khobar Towers from the television news after getting home from work on the afternoon of June 25, 1996.  She was horrified, not knowing if her son was safe.  Kathleen immediately called her family to tell them the news.  The next morning, her daughter-in-law called and told them that Craig was missing.  The family was in despair as they waited to find out any information.  It was three days before the family received news that Craig was seriously injured but had survived, and that he would be flown to Landstuhl Regional Medical Center in Germany.  Due to lack of means the family was not able to leave their farm to travel to see Craig during his recovery at Holloman Air Force Base in New Mexico, and were not reunited with him for two years.  Every time her son was deployed overseas, especially to Saudi Arabia, Kathleen feared for his safety. To this day, Kathleen finds it very painful to talk to her son about the attack.

191.   Plaintiff **Craig W. Dick**, the father of plaintiff **Craig J.  Dick**, was in severe shock when he heard that his son's quarters in Saudi Arabia had been bombed.  He had been scared for his son's safety when he had first deployed to Saudi Arabia and was in anguish as they waited to hear any news about him.  Only when his son was back at Holloman Air Force base to recover from his wounds did he stop fearing for his life.   He is still extremely worried about the lasting effects of the bombing on his son.

192.   Plaintiff **Brett M. Dick**, the brother of plaintiff **Craig J. Dick**, was twenty-one years old at the time of the bombing.  He felt extreme fear for his older brother's safety as the family waited to learn any news about him.  To this day, it is difficult for Brett to talk to his

brother about the attack and he  still feels anguish when he is reminded of the time of the bombing.

193.    Plaintiff **Cory P. Dick**, the brother of plaintiff **Craig J.  Dick**, was eighteen years old at the time of the bombing.  He was shocked and in despair when he heard that his older brother was in a bombing, not knowing if he would ever see him again.  It was very difficult for Cory to not see his brother for two years after the bombing, and was fearful for his brother's safety and well-being until he could see him again.

194.    Plaintiff **Jason B. Dixon** was in his bed in his dormitory on the fourth floor of Building 127 at Khobar Towers at the time of the attack.  His building was directly behind Building 131, the building closest to the blast site.  He sustained lacerations to his head and face from flying glass shrapnel from the broken windows.  Once out of bed, he walked out of his suite barefoot.  His feet were shredded by the broken glass on the floor and he had glass embedded in both feet.  He received treatment at the makeshift triage center at the Desert Rose chow hall and dug glass out of his feet with a pocket knife.  He received additional medical attention when he returned to Eglin Air Force Base in Florida.  He developed PTSD as a result of the bombing for which he still receives treatment and continues to suffer from nightmares, anxiety, depression, survivor's guilt, and intolerance of crowds and loud noises.  He was awarded the Purple Heart for his injuries and the Air Force Commendation Medal.  He was given a disability rating by the V.A.

195.    Plaintiff **Donna J. Dixon,** the wife of plaintiff **Jason B. Dixon**, first learned of the bombing when she received a phone call from the security police at Jason's home station, Eglin Air Force Base, telling her that there had been a bombing in the Khobar Towers complex. They did not have any information on the dead or wounded. Donna was in shock and panic-stricken.

She was in fear for Jason's life.  Five hours later, Jason was able to call her to tell her that he had survived but had sustained injuries in the attack.  Donna was relieved that Jason had survived but was still fearful for his safety while he was overseas.  Several days after the attack, Jason arrived back home at Eglin Air Force Base.  Donna was there to meet him at the flightline.  Jason developed PTSD from the bombing.  Donna has cared for Jason as he struggled with nightmares and anxiety, and she continues to have grief and concern for his well-being.

196.    Plaintiff **Carrie L. Dobos** was in her dormitory on the fourth floor of Building 133 in Khobar Towers at the time of the bombing.  She had just gone to sleep when she was awakened by a deafening explosion.  Glass and rubble were raining down on her. She had to crawl under the door to escape because it had been blown off the frame.  She sustained multiple lacerations from shattered glass. She did not seek immediate medical care for her own injuries, choosing to render first aid to other wounded airmen, and carried a bleeding airman down four flights of stairs and took her safely to triage.  She treated her wounds herself, removing most of the glass shards from her feet.  The next day, she went to the Khobar Towers clinic where they removed shards of broken glass from her feet.  She was awarded the Purple Heart for her injuries and the Air Force Commendation Medal with Valor for heroism.  She served in the Air Force until 1999.  She developed PTSD as a result of the bombing and continues to suffer from nightmares, sleep problems, anxiety, hypervigilance, and hyperarousal from loud noises.  She was given a disability rating by the V.A.

197.    Plaintiff **Edward C. Dobos**, the husband of plaintiff Carrie L. Dobos, was in suspense for hours before he learned that his wife had survived the bombing.  Edward wasn't able to make contact with his wife for three or four days.  He tried to hide the news from their

four young children and didn't tell them about it until the next day.  The family wasn't reunited with Carrie until her deployment was over, about three months later.

198.    Plaintiff **Molly A. Dobos** the daughter of Plaintiff **Carrie L. Dobos**, was thirteen years old at the time.  When her father told her about the attack she felt worried and scared for her mother.  She didn't know her mother had been injured until she came home.  Knowing her mother had been in a terrorist attack made her extremely fearful for her mother's safety.

199.    Plaintiff **Erika L. Rust**, the daughter of Plaintiff **Carrie L. Dobos**, was twelve years old at the time.  She overheard her father talking to someone about her mother being hurt. She was extremely worried about her mother.

200.    Plaintiff **Kasey D. Phillips**, the daughter of Plaintiff **Carrie L. Dobos**, was ten years old.  She remembers her father telling them about the attack the day after it happened and remembers him talking to people on the phone about her mother.  She was distressed and worried about her mother's safety until they were reunited three months later.

201.    Plaintiff **Haley I. Dobos**, the daughter of Plaintiff **Carrie L. Dobos**, was two years old at the time.  She has no memory of the Khobar bombing but grew up seeing the impact of it on her mother and has suffered as a result.

202.    Plaintiff **Anne M. French**, the mother of plaintiff **Carrie L. Dobos**, first learned that Carrie was in a bombing in Saudi Arabia from a phone call.  Anne was intensely fearful and anxious for her daughter's survival safety.  It was eight hours before the family learned that Carrie had survived, and they learned the next day that Carrie had been injured.  Anne was not able to be reunited with Carrie for another six months, which made Anne feel stressed and anxious until she could see her.  Anne continues to feel concern for Carrie and worries that Carrie still feels the effects of the bombing.

203.    Plaintiff **Charles D. French**, the father of plaintiff **Carrie L. Dobos,** first learned that Carrie had been in an attack at Khobar Towers when his wife told him.  The eight hours before they knew whether she had survived were agonizing, and Charles was scared and worried about her safety until he was able to talk to her on the hone  with his wife when they first learned about the bombing from a phone call.  .  Charles was scared and worried while waiting to hear more information. Charles continues to worry for Carrie's well-being and is concerned about the lasting effects of her injuries and PTSD.

204.    Plaintiff **Dena L. DeJoe**, the sister of plaintff **Carrie L. Dobos**, learned of the bombing of Khobar Towers on the news on her way to work. She didn't realize that her sister was deployed there until their mother called her at work.  Their mother told her that Carrie was stationed there but didn't have any information about her.  Dena was devastated and in despair, not knowing if her sister had survived.  The thought that Carrie could have been killed was unbearable.  Later that day, when Dena found out that Carrie was alive but injured, her anguish lifted momentarily, knowing that her sister had survived.  Dena was still worried that there could be another attack on Carrie's base and she remained anxious for her sister's safety until she could see her again. Dena continues to feel sorrow and concern for Carrie and worries that Carrie still feels the effects of the bombing.

205.    Plaintiff **Tina M. Judge**, the sister of plaintiff **Carrie L. Dobos**, learned about the Khobar Towers bombing from their mother,  She was terrified for her sister and feared for her life.  She found out from Carrie's husband that Carrie had survived, but they didn't know anything else about Carrie.  When she saw the television coverage of the buildings destroyed by the attack, she was in shock and anguish that Carrie was somewhere in the midst of the site of the

bombing. Tina later learned that Carrie had been injured and she felt anxious until she was reunited with her sister in December.  Tina continues to worry about Carrie's well-being.

206.   Plaintiff **Brenda J. French**, the sister of plaintiff **Carrie L. Dobos**, first heard about the attack early in the morning on her car radio news while pulling into work.  Brenda was so distraught when she heard the news that she could not work. She ended up having to quit her job because they would not let her leave to find out what was happening with her sister.  She found out later that day that Carrie had been injured and was shocked when she learned the extent of her injuries.  She was not able to reunite with her sister until Carrie returned home after her tour of duty was over. Brenda continues to feel concern for Carrie and worries that Carrie still feels the effects of the bombing.

207.   Plaintiff **Christopher O. Doggett** had just returned from the gym to his suite in the Civil Engineering Squad dormitory, Building 133.  He joined his friends in the day room and sat on the sofa near the sliding glass doors when the explosion burst in on them. The sofa was flipped over and Christopher lost consciousness.  The blast sprayed glass and concrete fragments all over him and causing multiple severe lacerations.  He was taken to a local hospital in Saudi Arabia and was then  aeromedically evacuated to the U.S. military hospital, Landstuhl Regional Medical Center, in Germany to treat his lacerations.

208.   As a result of the bombing Christopher sustained a concussion, a traumatic brain injury which produced chronic headaches, a split lip, cuts to his wrist and both knees exposing the bone, lacerations to his right arm, hearing loss, tinnitus, injuries to both knees requiring surgery, and PTSD with nightmares, extreme anxiety, sleep problems, and intolerance of crowds. He continues to suffer from headaches, hearing loss, tinnitus, knee pain, PTSD, nightmares, and

anxiety. He was awarded the Purple Heart for his injuries and was given a disability rating by the V.A. He attained the rank of Master Sergeant and retired from the Air Force in 2015.

209. Plaintiff **Sherrie K. McBride,** the mother of plaintiff **Christopher O. Doggett,** was at the grocery store when her cousin drove to the store to find her to tell her about the bombing. Sherrie immediately went home to watch the television news. She feared for the worse, thinking Christopher was badly injured or killed. She didn't hear from anyone for two days when Christopher was able to call and let her know that he had survived but was being treated in a hospital and had been injured pretty badly. When he finally flew into Whiteman Air Force Base on July 1, his family was waiting to meet him. To this day, she worries about Chris's health, both physical and mental.

210. Plaintiff **Alyxandra L. Doggett**, the daughter of plaintiff **Christopher O. Doggett**, was only a year and a half old at the time of the Khobar Towers bombing. She was too young to have memories of that time, but she has been told the first time she saw him father after the bombing she kept asking, "Owie, Daddy?" As a girl she believed her father was invincible for surviving the bombing but as she grew older she fully grasped the information and started to realize how much of an impact it had on her life today. Throughout her childhood she saw her father suffer from nightmares, hearing loss, glass shards resurfacing from his skin years later, painful flare ups of his injury sites, mood swings, and severe migraines. As an adult she has had vivid nightmares of the Khobar Tower Bombing and the injuries her father received.

211. Plaintiff **Sandra L. Skinner** , the sister of plaintiff **Christopher O. Doggett**, was 17 years old at the time of the bombing. When she heard the news, she was so terrified she could barely comprehend the reality of what had happened. They had no way of knowing if Chris was alive or how hurt he could be. They were the scariest days of her life. When they were able to

speak to him she was so relieved to know he was alive. When he arrived back home and she saw him for the first time with all of his bandaged wounds, it caused her anguish to see him look so confused and weak.

212.    Plaintiff **Bryan W. Fox** was in the kitchen of his suite in Building 131 at the time of the bombing. He had just returned from his last night working on the flightline and was washing laundry and joking with friends, and preparing to return to Eglin Air Force Base in a few days, when he heard a sound outside like a high powered rifle. The lights went out and he heard a roar. The blast lifted him off the ground and slammed him to the floor. He thought that he was dead. He was covered in blood from lacerations from shattered glass and escaped the building by following the voice of a technical sergeant who came to his aide. Despite his injuries and severe loss of blood he assisted another injured airman who was going into shock. He was taken by ambulance to a local hospital in Saudi Arabia where the broken glass was removed and his wounds were sutured. When he returned to Khobar Towers clinic the medical staff removed the sutures from the local hospital and re-sutured all his wounds.

213.    As a result of the bombing, Bryan sustained multiple lacerations to his back, left arm and left leg; damage to his left knee from a large piece of glass shrapnel which penetrated the knee and required surgery for an infection at Eglin Air Force Base; pain in his left arm from bracing himself when he was thrown to the floor; and PTSD with nightmares, flashbacks, and depression. He continues to suffer from PTSD for which he still receives treatment, nerve damage to his knee rendering his left calf permanently numb, and painful scars in his knee. He was awarded the Purple Heart for his injuries, the Armed Forces Expeditionary Medal, and the Air Force Achievement Medal. He was given a disability rating by the V.A. He served in the Air Force until 2002.

214.    Plaintiff **Sylvetta E. Fox**, the mother of plaintiff **Bryan W. Fox**, and his father, plaintiff **Walter W. Fox, Jr.** first heard the news when Bryan's aunt called during dinner to tell them there had been a bombing.   They turned on the television news and were shocked and devastated when they realized that Bryan was housed at Khobar Towers.   They called Bryan's base but weren't able to get information.   They feared Bryan had been killed until he was able to call late that night to let them know he had survived but was injured.   When Bryan was flown back to the U.S. several days later, his parents drove to Florida to be with him during his surgery and recovery.

215.    Plaintiff **John P. Garcia, Jr**. was on the fourth floor of his dormitory in Building 128 in Khobar Towers at the time of the bombing.   He was watching a movie and had just gotten up to go to bed when he saw the lights flicker and the front door slam off the hinges. The sliding glass door blew in and broken glass exploded into the room.   The blast threw him eight feet, and he lost consciousness.   He treated his own wounds and received buddy care first aid from other airmen. Despite his injuries, for the next 36 hours he helped bring the dead and injured to the triage area.   He began suffering dizzy spells, headaches, nightmares, and insomnia, forcing him to seek medical help at the Khobar Towers clinic.

216.    As a result of the bombing, John Jr. sustained a concussion, permanent memory loss, multiple shrapnel wounds to his face and limbs from the broken glass, painful shrapnel in his face that required surgery two years after the bombing, and PTSD with hypervigilance, nightmares, flashbacks, emotional numbness, difficulty concentrating, and intolerance of crowds,.   He still retains shrapnel in his face and extremities and had a piece of shrapnel removed from his gum line as recently as 2015.   To this day he still suffers from migraines, hearing loss, tinnitus, sleep apnea, memory loss, shrapnel retained in his face and limbs, and

PTSD, for which he still receives treatment.  He was awarded the Purple Heart for his injuries and was given a disability rating by the V.A.  He attained the rank of Master Sergeant and in 2015 retired out of the 99th Air Base Wing at Nellis Air Force Base.

217.    Plaintiff **Virginia R. Garcia**, the mother of plaintiff John P. Garcia, Jr., returned home from work the afternoon of June 25, 1996 to find her youngest son, her husband, and her mother, watching the television news.  They told her that there had been a serious terrorist attack in Saudi Arabia where John Jr. was deployed.  The only information on the news was that there were many deaths and injuries from a large bomb that exploded at a military base.  For the next three days, Virginia was distraught and couldn't sleep, work or eat because she was so fearful that her son had been killed.  Finally, John Jr.'s friend at the local Air Force base called to tell them he had been in the attack but had survived. This was the first confirmation the family had that he had been in the bombing, and Virginia remained extremely fearful for his safety.  About seven days after the attack, her son was able to call.  It wasn't until he came home in January 1997 that she learned he had been injured in the attack, which caused her additional shock and distress.

218.    Plaintiff **John P. Garcia, Sr.,** the father of plaintiff **John P. Garcia, Jr.** first learned of the attack from breaking news on television that a base housing American military personnel had been bombed with a very large explosive device.  He knew that John Jr. was deployed to Saudi Arabia but didn't know his exact location.  John Sr. was distraught for three days, fearing that his son might have been killed in the bombing.  Seeing the photographs of the damage to Khobar Towers and the crater left by the bomb brought him great anxiety.  Finally, John Jr.'s friend called to let the family know he had survived the attack.  John Jr. was finally able to call his family seven days after the attack.  John Sr. had not slept for those seven days and

the stress and anxiety had become unbearable.  When John Jr. returned home, John Sr. saw the scars on his face and learned for the first time that his son had been injured. This caused John Sr. to suffer renewed grief and distress for his son.

219.    Plaintiff **Michael Garcia**, the brother of plaintiff **John P. Garcia, Jr.** was living with his parents at the time of the bombing.  He heard about a bombing in Saudi Arabia on the radio.  He knew that his brother John Jr. was deployed to Saudi Arabia but didn't know where. He came home to turn on the television news to get more information, while his parents were still at work.  By the time his parents returned home the death toll from the bombing was increasing.  Michael became very choked up with worry, not knowing whether his brother was safe.  As the hours passed and John Jr. did not call, Michael became numb with worry and life seemed to stand still. Michael couldn't sleep, waiting for the phone to ring and watching for breaking news on the television.  Finally after three days, John Jr.'s friend called and told them that he had been in the bombing but had survived.  Michael was relieved that John Jr. had survived, but the confirmation that his brother had been in the attack brought new anxieties for John Jr.'s safety.  Michael was unbearably anxious until John Jr. finally was able to call seven days after the bombing.  When the family was reunited with John Jr. in January 2007, Michael was shocked to see the scar on his brother's face and learn that he had been injured in the bombing.

220.    Plaintiff **Steven D. Garcia** was in his dormitory bathroom on the ground floor of Building 126 at Khobar Towers, brushing his teeth and getting ready for bed at the time of the bombing. He saw the lights flicker and then the explosion knocked him to the floor while he heard screams and cries.  Broken glass and smoky dusty air were everywhere.  He sustained lacerations to his legs and back and used a towel to wipe the glass and debris from his wounds

and to staunch the bleeding.  He saw people from his unit running around with open wounds and pleading for help in the chaos after the blast. He developed PTSD as a result of the bombing which has negatively impacted his career and family life.  Steven still suffers from anxiety and nightmares about the bombing.  He was awarded the Purple Heart for his injuries and the Armed Forces Expeditionary Medal and the Air Force Achievement Medal was given a disability rating by the V.A.  Steven continued to serve in the Air Force and the Air National Guard of Nevada until 2003.

221.    Plaintiff **Carl R. Hamilton, Jr.** had only a couple of days left in his deployment. He was returning to Khobar Towers from the air base flightline with five other airmen at the time of the bombing.  They were halfway to the Towers when the bomb went off.  They saw the explosion and the blast shook his jeep.  Upon arriving at the Towers, he helped the security police at the check station and then went to help triage the injured.  He was close friends with three of the airmen who were killed in the bombing.   He developed PTSD from these traumatizing experiences and continues to suffer with night terrors, nightmares, flashbacks, panic attacks and depression, for which he still receives treatment. His PTSD and the changes in his personality resulting from the bombing resulted in his divorce from his wife, plaintiff **Autumn Hamilton Lyon**, after fourteen years of marriage.  His PTSD also changed his relationship with his family and friends.  He attained the rank of Senior Airman.  He  was given a disability rating by the V.A.

222.    Plaintiff **Karen M. Rainville**, the mother of plaintiff **Carl R. Hamilton, Jr.** first learned of the bombing on the television news on the afternoon of June 25, 1996.  In fear for Carl's life, she made continuous phone calls to the Red Cross but could not get any information. She waited in shock and despair.  Finally, late that night one of Carl's high school friends called

with a message from Carl that he had survived the bombing.  Carl had been trying to call them but their line was busy because they were trying to call for information.  The next morning, Carl called and even in a short phone call, Karen could tell that Carl was in shock and severely traumatized.  Two days after the bombing, Carl's squadron returned to Eglin Air Force Base in Florida and the family was there to meet him.  Karen took time off from work to care for Carl. Karen has been emotionally devastated from watching Carl suffer from PTSD.

223.    Plaintiff **Dennis A. Rainville**,  the stepfather of plaintiff **Carl R. Hamilton, Jr.,** was at work when his wife, plaintiff **Karen M. Rainville**, called and told him she had heard about the bombing on the television news.  In shock, Dennis came home immediately.  He and Karen desperately tried to get information about Carl from Eglin Air Force Base and the Red Cross and continuously watched for news about the bombing on CNN.  One of Carl's friends called to tell them that he had survived the bombing.  Carl called the next morning and Dennis could tell that he was severely traumatized.  When Carl returned home, Dennis saw him change from a fun-loving person to someone who is withdrawn and doesn't enjoy life. Dennis continues to suffer as a result of Carl's PTSD and depression.

224.    Plaintiff **Lisa M. Glenn**, the sister of plaintiff **Carl R. Hamilton Jr.** was working at Applebee's restaurant when she got a call from her mother about the news of the bombing.  Lisa was so distressed that she fell to the ground crying hysterically at the hostess station while her mother was telling her the terrible news. Lisa had to leave work immediately and a co-worker drover her home because she was not in the right state of mind to drive.  Later that night Carl's high school friend called to tell them he was alive.  Carl called at 8:00 am the next day and his family could tell that he was in severe shock.

225. Plaintiff **Autumn Hamilton Lyon** was married to plaintiff **Carl R. Hamilton Jr.** at the time of the bombing. Autumn and Carl had been high school sweethearts and they married when she was eighteen years old, four months before the Khobar Towers bombing. Autumn first learned of the bombing on the television news. She could not believe the devastation that she saw. In shock, she called the Red Cross and Carl's family but couldn't find more information. She didn't hear from Carl until the next morning. When Carl returned home he struggled with severe PTSD as a result of the bombing. As a young newly-wed, Autumn supported Carl through his struggle with nightmares, flashbacks, and depression. Carl's PTSD eventually led to their divorce fourteen years later. Autumn was eventually diagnosed with PTSD from the stress of living with Carl's PTSD.

226. Plaintiff **Jeffrey L. Hill** was at the flightline at the air base repairing an F-15 aircraft at the time of the bombing. When the bomb detonated he heard a horrific boom and the shock wave almost knocked him from the top of the aircraft. He could see a huge mushroom cloud at Khobar Towers and thought a nuclear bomb had been detonated. He had no idea what was happening and sought cover. He and others worked through the night to finish repairing the aircraft. In the morning he went to Khobar Towers to help with the wounded. After the wounded were transported to safety he helped clear the building and make sure that nobody would be left behind in the chaos. Jeffrey entered the destroyed building and searched every room looking for signs of life. Jeffrey walked through blood and found body parts everywhere. He saw huge cracks in the walls and worried the building could collapse but continued his search.

227. Jeffrey developed PTSD as a result of the bombing and continues to suffers with insomnia, nightmares, hypervigilance, agoraphobia, panic disorder, depression, and hyperarousal

from loud noises, for which he receives treatment.  He was given a disability rating by the V.A. He was awarded the Air Force Commendation Medal and the Armed Forces Expeditionary Medal.  He attained the rank of Master Sergeant and retired from the Air Force in 2007.

228.    Plaintiff **Adrienne L. Fulton,** the sister of plaintiff **Jeffrey H. Hill**, first learned of the bombing when her sister-in-law called and told her that Jeffrey was missing in a bombing in Saudi Arabia.  The family had been mistakenly informed that Jeffrey was missing in action in the Khobar Towers bombing. Twelve hours later, her sister-in-law called back and said that Jeffrey was not missing and was helping with the rescue.  The twelve hours of waiting were excruciating for Adrienne, and she had feared that her brother had been killed in the attack.  The grief and despair she felt were only relieved when her brother returned from his deployment. Adrienne has continued to suffer from worry and concern for her brother as he has struggled with PTSD as a result of the bombing.

229.    Plaintiff **Gregory M. Hillabrant** was returning to Khobar Towers from the air base flightline to pick up the next shift of airmen at the time of the bombing.  He saw the explosion and the blast blew his truck right off the road.  He immediately responded to the scene of the explosion, delivering needed medical supplies and emergency lighting and recovering his fellow injured airmen from the rubble.  He helped establish the triage area at the Desert Rose chow hall.  Gregory developed PTSD as a result of these traumatizing experiences and continues to suffer with anxiety, depression, survivor's guilt, and insomnia.  He was awarded the Armed Forces Expeditionary Award and the Air Force Certificate of Appreciation.  He was given a disability rating by the V.A.

230.    Plaintiff **Jane M. Hillabrant**, the mother of plaintiff **Gregory M. Hillabrant** had just gotten home from work when Gregory called and told her that he had survived the blast and

told her to turn on CNN.  Jane was shocked, worried, horrified and afraid for her son. She feared there could be another attack at Khobar Towers.  She spent hours watching the television news and going through the newspaper for a glimpse of Gregory in the rubble or any news about him. In the years since the bombing she has experienced profound emotional anguish as a result of Gregory's PTSD from the bombing.

231.    Plaintiff **Stephen R. Hillabrant,** the brother of plaintiff **Gregory M. Hillabrant** is three years older than Gregory and is very close to his brother.  Stephen first learned of the bombing when his mother called and told him about the attack.  He could hear that his mother was upset and crying.   Stephen became extremely worried for his brother's safety. Stephen emotionally supported his parents while the family waited for Gregory to return home.  The family has continued to depend on Stephen as a result of the trauma that Gregory experienced.

232.    Plaintiff **Steven Jaronsky** was cleaning the kitchen and joking with friends in his dormitory suite in Building 131 in Khobar Towers, as he prepared to return home to Eglin Air Force Base, at the time of the bombing.  The lights went out and he saw a flash of light.  The blast threw him backwards into the concrete wall and he lost consciousness.  The blast pelted him with so much broken glass that he thought he was being electrocuted.  In fear for his life, he took cover in a wall locker until the building was evacuated.  Outside he realized he was bleeding and covered in broken glass from head to toe.  He received stitches at the makeshift triage area at the Desert Rose chow hall.  As he started to lose blood and go into shock he was put on a stretcher and taken by ambulance to a local hospital.

233.    As a result of the bombing Steven sustained multiple lacerations, glass shrapnel all over his body, a concussion, permanent hearing loss and PTSD with nightmares, insomnia, and intolerance of loud noises  He still suffers from headaches, vision loss, hearing loss, neck

and shoulder pain, numbness in his right hand, and PTSD.  To this day Steven still has scars from the glass shards, and there is an outline on his shoulders and torso, like a shadow tattooed to his skin, where his friend, plaintiff **Bryan W. Fox**, was standing in front of him as he was pelted with broken glass. He was awarded the Purple Heart for his injuries and was given a disability rating by the V.A.

234.    Plaintiff **Elsie Lombardo**, the mother of plaintiff **Steven Jaronsky**, first heard that there was an attack on Air Force members in Saudi Arabia on the car radio while she was working at her job in real estate.  She learned that Steven's base was the target of a massive explosion with multiple deaths.  She called the Red Cross but was told they would not give out any information until Monday.  For two days, she frantically to find out if Steven was safe.  She could not eat or sleep and was crying hysterically and pacing the house.  Eventually Steven was able to call her from the hospital in Saudi Arabia and let her know that  he had survived but was injured and in extreme pain.  Elsie was relieved that Steven had survived but was still extremely worried for her son.  She was not reunited with Steven for another month.  To this day she suffers from nightmares about the bombing and has sleep problems.

235.    Plaintiff **Richard R. Jiron** was talking with his roommate in the day room of his suite on the seventh floor of Building 131 in Khobar Towers just before the bombing.  When the security police ran through and told everyone to evacuate, he ran with his roommates down the stairwell.  They were mid-way between floors when the bomb detonated.  Everything went dark and he was blown to the floor.  For a period of time he could not breath or hear, and then he had a deafening ringing in his ears.  He and his roommates managed to evacuate through the rubble, holding on to each other's shirts.  He was barefoot and his hands and feet were shredded by the

shattered glass. Despite his injuries he assisted other injured airmen.  Steven received medical treatment from the first responders at the triage area.

236.   As a result of the bombing Richard sustained a concussion, lacerations from broken glass, glass fragments embedded in his scalp, abrasions, ruptured eardrums, a concussion, and PTSD with insomnia, depression, anxiety, and intolerance of loud noises, for which he has received treatment.  He still suffers from hearing loss, tinnitus, headaches, and PTSD.  He was awarded the Purple Heart for his injuries as well as the Unit Award with Valor, the Armed Forces Expeditionary Medal and the Air Force Commendation Medal.  He was given a disability rating by the V.A.

237.   Plaintiff **Brandy O. Jiron**, the wife of plaintiff **Richard R. Jiron**, was a Senior Airman in the U.S. Air Force and was also an active duty contracting specialist at the time of the Khobar Towers bombing.   Brandy was home at F.E. Warren Air Force Base in Wyoming.  She spent the day in the park with her one year old son, plaintiff **Randall R. Jiron**.  As they returned home she turned on the ignition in the car and heard the news about the bombing in Saudi Arabia on the car radio.  In shock, she feared for Richard's life, uncertain if Richard's deployment was to the location of the bombing.  She received a phone call from her First Sergeant with news that terrorists had detonated a truck bomb next to Richard's barracks.  Brandy was speechless and didn't know how to react.  An hour later, Richard called to say that he had survived but was injured.  When Richard returned home, Brandy could tell that the bombing had changed him, and Richard's PTSD  has had a negative impact on their marriage.  Brandy was eventually diagnosed with depression as a result

238.   Plaintiff **Kimberly J. Jiron**, the daughter of plaintiff **Richard R. Jiron**, was three and a half years old at the time of the bombing.  She was visiting her paternal grandparents in

Colorado.  She knew that her grandparents were upset and her grandmother was crying and comforting her, but she didn't understand why.  For a year after the bombing, Kimberly would have a panic attack when her parents left the home.  When she was older, she found photographs of the devastation caused the bombing that shocked her.  She learned more about the attack it from family and from the internet because her father cannot talk about it.  As Kimberly grew up, her father's PTSD had a very profound effect on her, and she has suffered from PTSD, depression, and anxiety as a result.

239.    Plaintiff **Randall R. Jiron**, the son of plaintiff **Richard R. Jiron,** was one year old  at the time of the Khobar Towers bombing.  Although he has no memories of that time, Randall has suffered emotional distress as a result of his father's traumatic experiences in the Khobar Towers bombing.  Richard's personality had changed as a result of the bombing and he became detached and unemotional with his children.  Randall did not feel he was growing up in a supportive family.  Their family life was extremely restricted due to Richard's intolerance of crowds.  The family did not participate in normal family activities and turned down opportunities to travel because of Richard's fear of another terrorist attack.  Randall has suffered from anxiety and depression as a result of his father's PTSD.

240.    Plaintiff **Christopher M. Johnson** is the brother of Stephen K. Johnson, a United States Air Force servicemember who was injured in the Khobar Towers bombing and a plaintiff in *Schooley v. Islamic Republic of Iran*, supra.  At the time of the blast, Stephen was in his bedroom at Khobar Towers. He was knocked unconscious by the blast for fifteen to twenty minutes. He sustained a traumatic brain injury and developed generalized anxiety disorder as a result of the blast.

241.    Christopher, who is Stephen's younger brother, was attending the U.S. Army Armor Officer Basic Course at Fort Knox, Kentucky at the time of the bombing.  His mother called and told him there had been an attack in Saudi Arabia where Stephen was located. Shocked, Christopher left training and went home to Alabama to be with his mother and brothers.   It was at least twenty-four hours before the heard that Stephen had survived but was injured.  Stephen was in anguish as they waited to find out about Stephen's well-being.  It was at least two more days before they had solid information on Stephen.  Christopher was not able to see Stephen for a while because Stephen went to North Dakota upon his return to the U.S. and Christopher had to return to Fort Knox.  When Stephen returned home, Christopher could see that Stephen's personality had changed and he was anxious and withdrawn.  These changes had a deep effect on the relationship between the brothers.  Christopher continues to feel concern and worry for Stephen's well-being.

242.    Plaintiff **Roger K. Kaalekahi IV** was watching television in the day room of his third floor dormitory in Building 129 in Khobar Towers at the time of the explosion.  He saw a blue flashing light and felt an excruciating pain in his head. He sustained multiple lacerations from broken glass.  Roger found himself on the floor and unable to walk. Plaintiff **David C. Robinson** found him and helped him out of the building.  He was taken in a Humvee to the triage area and then taken by ambulance to a local hospital where his left leg was sutured and he had surgery for injuries to his right leg.  He was then taken by ambulance to a second hospital for surgery to relieve the pressure in his head from a skull fracture.  He remained hospitalized there for seven days and was then aeromedically evacuated to the U.S. military hospital, Landstuhl Regional Medical Center, in Germany, where he remained for seven days for recovery and to begin physical therapy.  He was flown to Andrews Air Force Base and was taken to Walter Reed

National Military Medical Center for seven days to continue physical therapy.  He was flown to Travis Air Force Bases in California where he had orthopedic surgery to remove glass from his left knee.

243.    As a result of the bombing, Roger sustained a depressed skull fracture; lacerations from broken glass to his face, hand, and legs; and PTSD with night terrors, insomnia, and anxiety.   He continues to suffer with chronic headaches, sleep apnea, depression, sleep deprivation, knee pain, high blood pressure and PTSD, for which he continues to receive treatment.  He was awarded the Purple Heart for his injuries and was given a disability rating by the V.A.

244.    Plaintiff **Valerie M. Kaalekahi**, the wife of **Roger K. Kaalekahi IV**, and their daughter, plaintiff **Kiana K. Kaalekahi**, had travelled from Montana to visit family in California to celebrate Kiana's first birthday. The day of the bombing was Roger and Valerie's third wedding anniversary.  Valerie was picking up her mother from work when a co-worker said there had been a bombing at a base in Saudi Arabia where U.S. servicemembers had been injured and killed.  Valerie wasn't sure of Roger's deployment location but when she tried to find information about Roger's location she received contradictory information.  The days after the bombing were very stressful as the news about the bombing was on every television station and Valerie still did not know if Roger had survived. She was distraught and desperate for more information.  Eventually she was told that Roger was unaccounted for, and her stress level and worry became unbearable.

245.    Three days after the bombing, Valerie received a call in the middle of the night from Roger from the hospital where he had been in surgery for a skull fracture.  She later learned that he had been in surgery and had been flown to Germany for further care.  Valerie and Kiana

stayed in California to wait for Roger to return to the U.S.  Valerie did not return to work.  Five weeks after the bombing, in mid-July, they were finally able to meet Roger at Travis Air Force Base, where he was having more surgery.  After the surgery, Roger was finally able to come home to be with his family and begin his recovery.  Through the years Valerie helped  Roger as he suffered from PTSD, chronic headaches, mood swings, sleep apnea, depression, sleep deprivation, knee problems, and high blood pressure.  Valerie continues to care for Roger and to suffer concern and sorrow as a result of his injuries.

246.    Plaintiff **Kiana K. Kaalekahi**, the daughter of plaintiff **Roger K. Kaalekahi IV**, was too young to have memories of events at the time of the bombing, which occurred six days before her first birthday.  As she as grew older, her parents told her about the bombing and her father's injuries.  Her father has told her that when they were reunited she hit him in the head with a toy, because she was upset that he had left her, especially so close to her birthday.  Roger's injuries had a deep effect on Kiana, who grew up witnessing her father suffer chronic headaches and going to the doctor.  As a child she always noticed his scars.  Growing up, it was difficult for Kiana to watch her father struggle with emotional and physical pain.   Kiana continues to suffer from worry and concern for her father's well-being.

247.    Plaintiff **David A. Krueger** was in the parking lot behind Building 131, waiting for transportation to the flightline at the air base for his night shift, at the time of the bombing. The blast detonated and threw him against a wall, hitting the back of his head and knocking him unconscious.   When he regained consciousness, everything was in chaos, and believing they were under attack from Iraq, he thought he was going to be killed.  He was awarded the Armed Forces Expeditionary Medal and a Certificate of Appreciation.  As a result of the bombing he sustained a concussion; a large bump to his skull where his head hit the wall; hearing loss;

tinnitus; and PTSD with nightmares, anxiety, and depression.  He continues to receive treatment for PTSD, which has affected his relationships and career prospects.  He still suffers from hearing loss and tinnitus.  He was given a disability rating by the V.A.  He attained the rank of Technical Sergeant before retiring from the Air Force out of Patrick Air Force Base.

248.   Plaintiff **David W. Long, Sr.** was in his dormitory on the ground floor of Building 128 at Khobar Towers, on the side of the building closest to the blast site, at the time of the bombing. The blast threw him to the floor.  The window shattered into the room and he sustained severe lacerations from glass shrapnel.  The flight surgeon wanted to send him to the local hospital but he refused to go because he saw other airmen with very severe injuries.  He received stitches at the triage area at the Desert Rose chow hall and follow-up treatment at the Khobar Towers clinic.  As a result of the bombing he sustained severe lacerations from glass shrapnel to his hands, face, and limbs, including a deep laceration to his left hand that reached to the knuckle and exposed his tendons. He still has pain in his left hand and has permanent scars. As a result of the bombing he developed PTSD with nightmares, night terrors, panic attacks, and anxiety around crowds, for which he still receives treatment.  He was awarded the Purple Heart for his injuries and the Outstanding Unit with Valor.  He was given a disability rating by the V.A.  He continued to serve in the Air Force until 2006 and attained the rank of Master Sergeant.

249.   **P**laintiff **Cynthia A. Long**, the wife of plaintiff **David W. Long, Sr.**, first learned of the bombing of Khobar Towers from a breaking news report on the television.  She knew he was housed at Khobar Towers, but she didn't know if he was safe at work at the air base or at his dormitory at Khobar Towers. Cynthia was in shock, fearing for David Sr.'s life and desperate for more information. A few hours later the Air Force called to inform her that David Sr. was on the list of survivors, but they could give no further information.  Cynthia was devastated to have to

tell the children that their father had been in an attack, but took them to their regular Bible school the next day to keep them occupied.  When they returned home David Sr. called and reluctantly told them he had been injured.  They were reunited when David Sr. returned home six weeks later.  The trauma that David Sr. experienced has negatively impacted his relationship with his family to this day.

250.   Plaintiff **David W. Long, Jr.**, the son of plaintiff **David W. Long, Sr.**, was thirteen years old at the time of the attack.  He was with his mother and learned about the attack from the television news.  The Air Force called and informed his mother that his father was in the attack and confirmed that he was alive, but provided no further details.  David Jr. was in fear for his father's safety and could not sleep.  The next day when David Sr. called and told them that he had been injured, David Jr. was relieved, but he was still very worried about his father's safety while David Sr. was deployed in Saudi Arabia.  They weren't reunited with David Sr. until his deployment ended six weeks later.  Growing up, David Jr. suffered as a result of David Sr.'s PTSD.  David Sr. was not able to participate in normal family activities and sporting events with David Jr. and he could not be around crowds.

251.   Plaintiff **John G. McCarthy** was on the seventh floor of Building 131 when a security policeman, who suspected a bomb was about to detonate, ran into the suite and told everyone to evacuate.  John ran downstairs and began to evacuate the lower floors.  He had evacuated everyone from the fifth floor and was in the stairwell between the fifth and fourth floors when he heard a large "whoosh" sound and the bomb detonated.  He went flying across the stairwell and was slammed into the floor, knocking him unconscious and causing a concussion and traumatic brain injury.  Sitting up after the blast, he momentarily thought he had been blinded. Despite his  injuries, he provided assistance to other injured airmen.  He received

71

medical attention at Khobar Towers and follow-up treatment when he returned to Patrick Air Force Base. As a result of the bombing he sustained permanent damage to his head, neck, and back and has had two neck surgeries as a result of his injuries. To this day, he continues to suffer from neck and back pain. He developed PTSD as a result of the bombing, for which he still receives treatment, and has suffered with nightmares, night terrors, depression and anxiety. His anxiety and stress levels eventually resulted in a heart attack while he was still in his forties. He was awarded the Purple Heart for his injuries and the Air Force Commendation Medal with Valor for his courage in evacuating the fifth floor of Building 131. He was given a disability rating by the V.A. He attained the rank of Chief Master Sergeant before he retired out of the 4th Aircraft Maintenance Squadron, Seymour Johnson Air Force Base.

252. Plaintiff **Jason L. Melvin** was sleeping in his dormitory on the seventh floor of the security police headquarters, Building 120 in Khobar Towers. The force of the blast knocked him out of bed and threw him to the floor. Despite his injuries, he reported for duty and responded to the blast location where there was massive chaos. After securing the area, Jason helped carry the deceased, evacuated injured airmen from the destroyed buildings, and searched the rubble for survivors. Jsson developed PTSD as a result of the bombing, for which he still receives treatment, and continues to suffer from hypervigilance, panic attacks, phobias, intrusive memories, and insomnia. He still has tinnitus from the blast. He was given a disability rating by the V.A. He was awarded the Air Force Achievement Medal with Valor for his actions in the aftermath of the explosion. He attained the rank of Senior Airman.

253. Plaintiff **Flor D. Morales** was in her room in Building 127 at Khobar Towers at the time of the bombing, cleaning up in preparation to return to the US. Suddenly she felt a powerful suction and heard a booming sound. The blast threw her across the room, causing

permanent neck and back injuries, and she sustained multiple lacerations from flying glass.  She was in fear for her life as the building shook and she feared it would collapse.   She didn't realize she was bleeding until someone yelled out to her. Her wounds were cleaned and bandaged on site at Khobar Towers.  She received treatment for her neck and back injuries at Eglin Air Force Base in Florida and at Tinker Air Force Base in Oklahoma.  As a result of the bombing, she sustained severe lacerations to her right arm and leg, injury to her head, trauma to her neck and back requiring years of treatment, and PTSD with anxiety, insomnia, and depression.  She still suffers from degenerative disc disease, bulging discs, and other permanent orthopedic injuries sustained in the bombing, which cause her constant, daily pain in her neck and back and radiating pain in her arms and legs, making it difficult to complete daily tasks; migraine headaches; tinnitus; permanent painful scars on her arm and leg; and PTSD, for which she continues to receive treatment.  She was awarded the Purple Heart for her injuries and was given a disability rating by the V.A.   She served in the Air Force until 2017 and attained the rank of Master Sergeant .

254.    Plaintiff **Martina Ortiz**, the mother of plaintiff **Flor D. Morales**, first learned of the attack on Khobar Towers on the television news after coming home from work.  For three or four hours she was distraught and in fear for her daughter's life until Flor called her to let her know she had survived the attack. Martina continued to worry for Flor's safety until she returned from her deployment. Martina continues to experience worry and sorrow for Flor because of the pain Flor still suffers from the injuries she sustained in the bombing.

255.    Plaintiff **Morris M. Myers** was on the balcony of his suite in his dormitory building in Khobar Towers, talking on the phone with his wife when he heard a loud "pop". The blast wave threw him first against the wall and then against the balcony railing, before he

was thrown onto his back.  Despite needing medical attention, he rendered first aid to the injured and helped transport injured airmen to the triage area.  He wasn't able to return to his family at his Air Force base in the U.K. until September 1996.  He was awarded the Air Force Achievement Medal with Valor.  As a result of the bombing he sustained severe injuries to his back and neck from being thrown against the wall.  He developed PTSD as a result of the bombing with flashbacks, hypervigilance,  depression nightmares, and insomnia, and for which he has received treatment. He still suffers from back pain and PTSD.  He was given a disability rating by the V.A.

256.    Plaintiff **Sherry D. Byes**, the mother of plaintiff **Morris M. Myers**, learned of the bombing when the Air Force called her advising that her son was listed as missing in action in the bombing of Khobar Towers. She was at work at the time of the call and had to leave because she was so distressed.  Sherry called Morris' wife who was at his air base in the U.K, who told her that the phone line had gone dead when she was talking to him.  Sherry was in anguish, believing Morris had been killed.  The next day, Morris was able to call her and let her know that he was injured but had survived.  Even after she spoke to him, she was in extreme distress and in fear for her son. The stress exacerbated Sherry's high blood pressure and she had to stay home from work for a week.  Since Morris was stationed at an Air Force base in the U.K. she was not able to see him when his deployment ended, causing her more distress.  She was not able to function and care for her other children during this time.

257.    Plaintiff **Elisha J. Novell** was at the air base dining facility, on duty as a security police Staff Sergeant, at the time of the bombing. He heard a radio alert regarding suspicious activity near Building 131 and immediately departed to report to Khobar Towers.  As he stepped outside the dining facility, the bomb detonated. He immediately responded to the scene of the

explosion to help evacuate the survivors from the rubble.  He was posted as the area supervisor and established a safe cordon and evacuated nonessential personnel.  Later, he assisted the FBI in securing the crime scene and searching the rubble for evidence.  He developed severe PTSD, sleep problems, and depression as a result of these traumatizing experiences.  The changes in his personality led to his divorce from his first wife.  He continues to receive treatment for PTSD. He was given a disability rating by the V.A.  He was awarded the Armed Forces Expeditionary Medal and attained the rank of Master Sergeant before retiring out of the 9th Force Support Squadron, Beale Air Force Base.

258.    Plaintiff **Mark W. O'Toole** was about to walk onto the balcony in his dormitory at Khobar Towers at the time of the bombing.  He was blown backwards by the explosion and knocked unconscious.  When he came to he had multiple lacerations to his face and body from broken window glass.  He received medical attention at the triage area where his lacerations were stitched.  The  next morning he received treatment at the Khobar Towers clinic for ringing in his ears, a concussion, and a severe headache.

259.    As a result of the bombing Mark sustained a concussion, multiple lacerations from glass shrapnel to his face and under his left eye, broken glass in his right eye, broken glass in his arms, legs, and torso, and PTSD with nightmares, anxiety, and intolerance of loud noises. He continues to receive treatment for PTSD.  He was awarded the Purple Heart for his injuries and was given a disability rating by the V.A.  He attained the rank of Staff Sergeant.

260.    Plaintiff **Stacey L. O'Toole**, the wife of plaintiff **Mark W. O'Toole**, first learned of the bombing from a special report on television.  She suffered severe anxiety and despair for five hours before she found out that Mark had survived but had been injured.  She continued to worry about Mark's safety until the family was reunited with him two months later when he

returned to the U.S.  Stacey and Mark's relationship has been deeply affected by Mark's PTSD has deeply affected his relationship Stacey continues to feel distress and worry for Mark's well-being.

261.    Plaintiff **Kayla L. Kasten**, the daughter of plaintiff **Mark W. O'Toole**, was five years old at the time of the bombing.  Kayla remembers her mother panicking after hearing about the attack and not being able to get information about her father.  When Mark returned home, his personality had changed and his PTSD affected Kayla's relationship with him.  Mark had nightmares that would wake up everyone in the house.  The family couldn't participate in normal activities because Mark could not tolerate loud noises. She constantly worried about her father when he was deployed overseas.  Kayla continues to have sorrow and worry for her father because of his PTSD.

262.    Plaintiff **Kelsie E. O'Toole**, the daughter of plaintiff **Mark W. O'Toole**, was two years old at the time of the bombing.  Although Kelsie doesn't have memories from the time of the bombing, Mark's PTSD strongly affected Kelsie's childhood.  The family curtailed normal leisure activities because Mark could not tolerate loud noises.  Kelsie constantly worried about her father while she was growing up because of his PTSD and depression.  Kelsie continues to feel concern and sorrow for her father and feels the need to protect him.

263.    Plaintiff **Eldred E. Pailin** was in the day room of his dormitory on the first floor of Building 104 at Khobar Towers.  He felt a vibration and then the blast ripped through the building.  He was thrown into a wall and was blasted with glass and metal fragments.  He was bleeding from his arms and legs as he evacuated the building.  In the chaos, someone gave him a towel to stop the bleeding.  His wounds were sutured by a doctor at the triage center and he received follow-up treatment at the Khobar Towers clinic.  As a result of the bombing he

76

sustained multiple lacerations from shattered glass to his legs and arms.   He developed PTSD as a result of the bombing and suffers from sleep problems, anxiety, and intolerance of crowds.   He was awarded the Purple Heart for his injuries and the Armed Forces Expeditionary Medal.   He was given a disability rating by the V.A.   He attained the rank of Master Sergeant before retirement.

264.    Plaintiff **Jeremy L. Parratt** was working at night and was preparing to drive to the air base at the time of the bombing.   Seconds after he drove his van out of the gates of Khobar Towers on the way to the air base, the sky lit up and he heard and felt a huge blast.   The concussion wave blasted his van off the road.   He felt as if his eardrums had ruptured and his ears began ringing.   He was ordered to patrol at the flightline all night without a weapon, alone, to look for people overrunning the base.   In the morning when he returned to Khobar Towers he saw his dormitory, Building 131, reduced to rubble and saw blood everywhere. He sustained permanent hearing loss and tinnitus from the blast's concussion wave.   He developed PTSD as a result of the bombing and continues to suffer with nightmares, sleep problems, sleep apnea, depression, hypervigilance, panic attacks, memory loss.   He continues to receive treatment for PTSD.   He was awarded the Armed Forces Expeditionary Medal.   He was given a disability rating by the V.A.

265.    Plaintiff **Priscilla R. Bradley**, the mother of plaintiff **Jeremy L. Parratt**, was driving to school when she heard on the radio that Khobar Towers had been bombed and numerous servicemembers had been killed.   She felt like she had been punched in the chest. She couldn't breathe and had to pull over and sit until she was able to breathe and resume driving. She turned around and drove back home. She called family members and the Red Cross.   For six days, she didn't know if Jeremy had been wounded or killed in the explosion.   Eventually the

Red Cross put Priscilla in contact with Jeremy's First Sergeant and found out Jeremy had survived. The next several days were some of the longest days of her life.   Even after finding out Jeremy was alive, she had nightmares about the bombing.   She continued to worry about Jeremy's safety until she was able to reunite with her son six months after the attack.   Priscilla saw that Jeremy experienced personality changes as a result of PTSD, and Priscilla continues to have sorrow and concern for Jeremy.

266.     Plaintiff **Amy P. Hall**, the sister of plaintiff **Jeremy L. Parratt**, was at home when she first learned of the bombing from breaking news on television announcing the attack. She was in shock and in fear for her brother's life.   It was six days before they found out Jeremy had survived.   About six months after the attack, she was able to reunite with Jeremy when he returned home.   Amy felt that Jeremy came home a different person due to his PTSD.   She is still haunted by his daily struggles. Amy considers the Khobar Towers bombing to have been the most difficult times in her life and she still has nightmares about her brother the bombing.

267.     Plaintiff **Pascha R. Payton** was in the day room on the first floor of her dormitory building at Khobar Towers, watching television and eating dinner with her roommate, about six feet from a sliding glass door.   Suddenly, she heard an incredibly loud blast and thought fighter jets were dropping bombs on them, so she dropped to the floor.   The roof caved in and the floor came out from under her.   The sliding glass door shattered and pelted her with broken glass. Despite her injuries, she rendered first aid to her roommate and helped her evacuate the building. They had to crawl through the rubble to escape the damaged building.   As a result of the bombing, Pascha sustained severe lacerations from broken glass on her arms and legs, which were treated at the Khobar Towers clinic. She still suffers from PTSD as a result of the bombing, with anxiety, depression, memory loss, sleep impairment, and personality changes.   She was

awarded the Purple Heart for her injuries and was given a disability rating by the V.A.   She attained the rank of Master Sergeant before retirement.

268.    Plaintiff **Michael J. Perfetti** was in the day room of his dormitory in Building 126 at Khobar Towers when the bomb detonate and he heard an incredibly loud blast.   The sliding glass door shattered and pelted him with broken glass. He sustained multiple lacerations from the broken glass.   He later had surgery to remove shards of glass from his foot. He developed PTSD as a result of the bombing and still suffers from anxiety, hypervigilance, social isolation, intrusive thoughts, and survivor's guilt.    He was awarded the Purple Heart for his injuries and the Armed Forces Expeditionary Medal.   He was given a disability rating by the V.A.

269.    Plaintiff **Rafael Rivera, Jr.** was watching television with his friends on the fifth floor of his dormitory in Building 131 at Khobar Towers when Staff Sergeant plaintiff **John G. McCarthy**, ran into the suite and told them to evacuate.   Rafael ran to the elevator and took a step inside, at which point the bomb detonated and he was knocked unconscious.   He was found among the debris, lying on top of the elevator doors, with his eyes open but unresponsive. Rafael was taken to a local hospital in Dhahran where he was hospitalized for five days and had surgery to remove glass from his leg. He was aeromedically evacuated to the U.S. military hospital, Landstuhl Regional Medical Center, in Germany before being returned to Patrick Air Force Base for further treatment. As a result of the bombing he sustained a fractured shoulder and shoulder blade, glass embedded in his Achilles tendon, abrasions to his arms and legs, lacerations from his head to his ankles, hearing loss, tinnitus, and PTSD.   He required surgery to repair his shoulder. He still suffers from pain in his shoulder and ankle, hearing loss and tinnitus, and cannot run or play sports.   He still suffers from PTSD with nightmares and intrusive thoughts of the bombing.

He was awarded the Purple Heart for his injuries and was given a disability rating by the V.A. He attained the rank of Master Sergeant before retiring from the Air Force.

270.    Plaintiff **David C. Robinson** was in the dayroom of his third floor dormitory suite in Building 129 in Khobar Towers, preparing for the next day's duty. He was standing in front of sliding glass doors when he saw a bright flash and heard a loud boom. The blast threw him across the room and knocked him unconscious. When he regained consciousness he felt blood streaming down his face. Despite his injuries he rescued a severely injured airman, plaintiff **Roger K. Kaalekahi IV**, from the damaged building in complete darkness and rendered him first aid.

271.    David was taken by truck to the air base medical center where he received stitches to the most serious wounds in his face, arms and legs.  He was taken by ambulance to a local hospital for stitches to his arms and legs and then aeromedically evacuated to the U.S. military hospital, Landstuhl Regional Medical Center, in Germany. He was flown to Andrews Air Force Base after three days. He received further treatment and had surgery to remove glass from his eye, right arm and head at Holloman Air Force Base.

272.    As a result of the bombing he  sustained a concussion; severe lacerations to his head, face, arms, and legs from broken glass; broken glass embedded in his limbs; glass lodged in his left eye; permanent scars; and PTSD.  He still suffers from numbness in the fingers of his right hand resulting from a deep laceration to the elbow, migraine headaches, tinnitus, balance problems, problems with memory and concentration, and PTSD with nightmares, insomnia, depression, survivor's guilt, and depression.   He still receives treatment for PTSD. He was awarded the Purple Heart for the injuries he sustained in the bombing, the Air Force

Commendation Medal with Valor, and the Air Force Outstanding Unit Award with Valor. He was given a disability rating by the V.A.

273.    Plaintiff **Trena W. Schmidt** was in bed in her dormitory on the seventh floor of Building 110 at Khobar Towers.   The room started to rumble and she thought it was an earthquake or that they were being bombed by airplanes. The explosion threw her out of bed. Despite fearing for her life, she helped evacuate another injured airman.   In the chaos, she ignored her own injuries and immediately began assisting the  injured survivors and held IVs and bandaged wounds.   She treated her injuries with self-aid and buddy care and received medical treatment at the triage area.   As a result of the bombing she sustained multiple lacerations from glass shrapnel to her feet and lower legs and permanent orthopedic injuries.   She continues to suffer with back and neck pain, stiffness, and loss of range of motion.   She developed PTSD as a result of the bombing and suffers from nightmares, anxiety, and intolerance to loud noises. She still receives treatment for PTSD.   She was awarded the Air Force Achievement Medal with Valor and the Armed Forces Expeditionary Medal.   She attained the rank of Master Sergeant before retiring from the 28th Maintenance Squadron, Ellsworth Air Force Base in South Dakota. She was given a disability rating by the V.A.

274.    Plaintiff **Michael S. Spencer** was watching television in the day room of his dormitory building across from the chow hall in Khobar Towers at the time of the explosion.  He heard the blast and shouted to his roommates to hit the floor.  The blast wave threw him from the day room to the kitchen entryway.   His head was thrown against the wall and he lost consciousness for several minutes.  When he came to, he couldn't hear anything, his nose and ears were bleeding, and his head ached.  As they evacuated the room, the door was stuck shut from the suction of the blast. Michael charged at the door with his shoulder to force it open,

causing permanent injury to his shoulder. Despite his injuries he carried his injured roommate, who was in shock, down six flights of stairs and brought him to the triage area at the Desert Rose chow hall.  There was no time to seek treatment for himself and Michael administered self-aid and took Tylenol to treat his injured shoulder and headache. Michael found body parts in the rubble while searching for survivors.  As a result of the bombing, he sustained a concussion, a traumatic brain injury resulting in memory loss, a shoulder injury that required surgery, hearing loss, tinnitus, and PTSD with nightmares, depression, sleeping problems, and intolerance of crowds.  He still suffers with shoulder pain, hearing loss, tinnitus, and PTSD, for which he still receives treatment.  He was given a disability rating by the V.A.

275.    Plaintiff **Talena M. Spencer**, the wife of plaintiff **Michael S. Spencer**, was at her grandmother's home when Michael called her and told her he had been in a bombing.  Talena learned more about the attack an hour later on the television news.  She was in shock and in fear for Michael's safety. They had only been married for just over a year. A few days later, Michael called and told her that he was injured and in pain.   She was not reunited with Michael until July 1996.  Michael's PTSD has had a negative impact on their marriage.  Talena has experienced severe stress helping Michael cope during episodes where he is experiencing nightmares, flashbacks, and depression.   These issues have affected Talena's career and the family's finances, as Talena has had to take time off work many times to care for him.

276.    Plaintiff **Andre L. Stanton** was watching television in the day room of his fifth floor dormitory in Building 131 in Khobar Towers, on the side of the building facing the blast, when security police raced down the corridor yelling "Clear the building!" Andre bolted to get his identification and to check on his roommate, when the bomb detonated.  He was flung against the wall and sustained severe glass and concrete shrapnel lacerations.   He was taken by

ambulance to a local hospital for treatment where he was treated for two days, and then aeromedically evacuated to the U.S. military hospital, Landstuhl Regional Medical Center, in Germany. He was treated there for several days before he was flown back to Eglin Air Force Base. As a result of the bombing Andre sustained severe lacerations to his face, nose, neck, arms, legs and hand, a broken tooth, injury to his jaw, and a torn tear duct. He required reconstructive surgeries for the injuries to his face and right arm. He still suffers from a blocked tear duct and locking of his jaw. He was awarded the Purple Heart for the injuries he sustained in the bombing, and was given a disability rating by the V.A. He attained the rank of Master Sergeant before retirement.

277. Plaintiff **Billy J. Stewart** was jogging around the Khobar Towers compound and was twenty yards from Building 131, the building closes to the blast site, at the time of the bombing. He saw the truck used in the bombing park directly in front of the building and saw the flash when the bomb detonated. The explosion knocked him to the ground and he was blasted with shrapnel and broken glass. He received medical treatment at the triage at the Desert Rose chow hall and at the Khobar Towers clinic, where the shrapnel was removed. As a result of the bombing he sustained multiple lacerations from shrapnel and broken glass, including two lacerations to his torso and seven lacerations to his back and legs, including a large glass shard penetrating his right knee. He developed PTSD as a result of the bombing and suffers from nightmares, depression, anxiety, survivor's guilt, and hypervigilance, for which he still receives treatment. He still suffers from knee pain. He was awarded the Purple Heart for the injuries he sustained in the bombing, the Air Force Achievement Medal, and the Armed Forces Expeditionary Medal. He retired from the 42nd Comptroller Squadron, Maxwell Air Force Base, in Alabama. He was given a disability rating by the V.A.

278.    Plaintiff **Stella L. Thot** is the mother of Steven R. Kitis, a member of the United States Air Force who was seriously injured in the Khobar Towers bombing and a plaintiff in *Schooley v. Islamic Republic of Iran*, supra.   Steven was in the common room in his Khobar Towers dorm when the blast slammed him head first into the wall.   He suffered severe lacerations and bleeding as well as personality changes.   He was awarded the Purple Heart for his injuries and was given a disability rating by the V.A.

279.    Stella first learned about the Khobar Towers bombing from the television news. She knew that her son Steven was deployed to that region but wasn't sure where he was located. She immediately panicked and called Steven's wife, who answered the phone crying and hysterical and told her that Steven was in Khobar Towers.   Stella was scared beyond belief, not knowing if her son was alive, injured, or had been killed.   Steven called her the next day and let her know he was alive but had been injured and had been taken by ambulance to a local hospital in Saudi Arabia.   When Steven came home several weeks later, Stella could tell that Steven's personality had changed and he was no longer relaxed and happy but had become quick to anger, isolated, and distant.   Stella continues to suffer from the negative impact of these changes on her relationship with Steven.

280.    Plaintiff **Michael D. Weimer** is the brother of Aaron R. Weimer, a member of the United States Air Force and a plaintiff in *Schooley v. Islamic Republic of Iran*, supra.   Aaron suffered severe emotional injuries in the Khobar Towers bombing. Aaron was watching television in his Khobar Towers dormitory when the sliding glass door exploded inward and he heard the loudest noise he'd ever heard.   He helped evacuate other victims and rendered first aid to injured servicemembers. Aaron developed severe PTSD as a result of the bombing and was given a disability rating by the V.A.

281.    Michael learned about the attack on Khobar Towers from the local television news on the afternoon of June 25, 1996.  Michael was in shock with worry about Aaron and in fear for his brother's life.  The family tried to obtain information from the Air Force and the State Department but they received no information about Aaron.  Michael and Aaron are very close brothers and the wait for information was agonizing.  Six hours later, Aaron called and let the family know he was alive.  Michael was relieved that Aaron was alive returned home in November 1996.  Aaron's struggles with PTSD have had a profound impact on his brother Michael, who has helped Aaron through the difficult emotional turmoil of being a survivor of the bombing.

282.    Plaintiff **Anthony J. Whiting** was watching television in his dormitory suite in Building 133 at Khobar Towers, in the corner closest to Building 131, at the time of the bombing. He was pelted with flying glass and debris. Despite the danger to his life, he combed the building for survivors, helped evacuate the injured, and performed first aid on injured airmen. His wounds were treated with self-aid and buddy care and by medics at the triage area. He was also treated at the Khobar Towers clinic two days after the attack.  As a result of the bombing he sustained multiple lacerations from glass shrapnel including a large wound to his right knee, a large cut to his head, over fifty small cuts to his lower legs, numerous cuts to his feet from walking barefoot on broken glass, and permanent hearing loss.  He developed PTSD as a result of the bombing for which he received treatment.  He still suffers with hypervigilance, sleep problems and intolerance of loud noises and crowds.  He was awarded the Purple Heart for his injuries and the Air Force Commendation Medal with Valor. He was given a disability rating by the V.A. He attained the rank of Master Sergeant before his retirement from the 87th Civil Engineering Squadron, McGuire Air Force Base, New Jersey.

283.    Plaintiff **Robert K. Young** was in his room on the fourth floor of his dormitory in Building 104 at the time of the bombing.  He was preparing to take the 10:15 pm bus to the air base to begin his work shift.  He was standing in the middle of his room when the ground rumbled and the window shattered into the room.  The blast threw him to the floor on top of the broken glass.  As he evacuated the building, he realized he was dripping blood onto the stairs. He treated his wounds with a towel and with gauze handed to him by a passing airman. Despite his injuries he helped bring another injured airman to the triage area.  Later, he was sent to the triage area for treatment but he allowed the more seriously injured airmen to be treated instead. Despite needing stitches, his wounds were never treated. As a result of the bombing, he sustained multiple severe lacerations from the broken glass and has permanent scars from his shrapnel wounds.  He developed PTSD as a result of the bombing, for which he continues to receive treatment, and suffers from nightmares, sleep problems, anxiety, and depression.  He was given a disability rating by the V.A.  He attained the rank of Staff Sergeant.

**COUNT I**
**BATTERY**
**By Surviving Injured Plaintiffs**
**(Under 28 U.S.C. § 1605A(c))**

284.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

285.    Hezbollah, with the material support of defendant Iran, willfully, intentionally, violently and forcefully committed illegal acts during the bombing of the Khobar Towers complex.

286. These willful, wrongful and intentional acts constituted a violent battery upon the Surviving Injured Plaintiffs and caused physical injury to them.

287. As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah, with the material support of defendant Iran, each and every one of the Surviving Injured Plaintiffs was damaged in that they endured physical injury, pain and suffering, mental anguish, and past and future economic losses including medical expenses, lost income, and loss of earning capacity.

288. Defendant's conduct in providing material support to Hezbollah for the bombing of Khobar Towers was outrageous, criminal, malicious, willful, and wanton in its reckless indifference to human life and the rights of others, a threat to public safety and international peace and security, and in violation of fundamental norms of international law, warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

**COUNT II**
**ASSAULT**
**By Surviving Injured Plaintiffs**
**(Under 28 U.S.C. § 1605A(c))**

289. Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

290. During the bombing of the Khobar Towers, Hezbollah, with the material support of defendant Iran, intentionally and willfully acted to cause harm to the Surviving Injured Plaintiffs, thereby putting them in fear for their lives and in imminent apprehension of harm and injury, or intended to put the Surviving Injured Plaintiffs in imminent apprehension of such contact, as a direct result of the bombers' actions.

291.    As a direct and proximate result of the willful, wrongful, and intentional act of Hezbollah, with the material support of defendant Iran, each and every one of the Surviving Injured Plaintiffs were injured in that they endured imminent apprehension of harm, extreme mental anguish, physical injury, pain and suffering, and past and future economic losses including medical expenses, lost income, and loss of earning capacity, all to their damage.

292.    Defendant's conduct in providing material support to Hezbollah for the bombing of Khobar Towers was outrageous, criminal, malicious, willful, and wanton in its reckless indifference to human life and the rights of others, a threat to public safety and international peace and security, and in violation of fundamental norms of international law, warranting an award of punitive damages under 28 U.S.C. § 1605A(c).


## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### By Surviving Injured Plaintiffs
### (Under 28 U.S.C. § 1605A(c))

293.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

294.    The actions of defendant Iran of providing material support to Hezbollah, causing the bombing of the Khobar Towers complex, constitutes extreme and outrageous conduct intended to cause the Surviving Injured Plaintiffs severe emotional distress.

295.    The actions by defendant Iran were undertaken deliberately, intentionally, willfully, maliciously, wantonly and recklessly, with knowledge that the attack on Khobar Towers would cause severe emotional distress to the United States Air Force personnel who were housed in Khobar Towers.

296.   The actions of defendant Iran did in fact cause the bombing and subsequently was the cause in fact of the Surviving Injured Plaintiffs suffering severe emotional distress.

297.   As a direct consequence of the actions of defendant Iran, the Surviving Injured Plaintiffs suffered severe emotional distress, extreme mental anguish, shock, psychological injuries, and past and future economic losses including medical expenses, lost income, and loss of earning capacity.

298.   Defendant Iran, by engaging in this intentional, extreme, outrageous, reckless and unlawful conduct, intentionally and recklessly inflicted severe emotional distress upon the Surviving Injured Plaintiffs.

299.   Defendant's conduct in providing material support to Hezbollah for the bombing of Khobar Towers was outrageous, criminal, malicious, willful, and wanton in its reckless indifference to human life and the rights of others, a threat to public safety and international peace and security, and in violation of fundamental norms of international law, warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

**COUNT IV**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**AND LOSS OF SOLATIUM**
**By Immediate Family Members of Surviving Injured Plaintiffs and Immediate Family**
**Members of  Surviving Injured *Schooley* Plaintiffs**
**(Under 28 U.S.C. § 1605A(c))**

300.   Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

301.   The actions of defendant Iran of providing material support to Hezbollah, causing the bombing of the Khobar Towers complex, constitutes extreme and outrageous conduct intended to cause severe emotional distress to the plaintiffs who are immediate family members of  the U.S. Air Force personnel who were housed in Khobar Towers.

89

302.    The actions by defendant Iran were undertaken deliberately, intentionally, willfully, maliciously, wantonly, and recklessly, with knowledge that the attack on Khobar Towers would cause severe emotional distress to the immediate family members of the United States Air Force personnel who were injured in the bombing of the Khobar Towers.

303.    The Plaintiffs who are immediate family members of the Surviving Injured Plaintiffs, and the Plaintiffs who are immediate family members of the Surviving Injured *Schooley* Plaintiffs, were aware that the bombing of the Khobar Towers had taken place, knew that their loved ones were present at the Khobar Towers, feared that their loved ones were killed or injured and ultimately learned that their loved ones survived but were injured in the attack.

304.    The actions of defendant Iran did in fact cause the bombing and subsequently was the cause in fact of the plaintiffs' severe emotional distress.  As a direct consequence of the actions of defendant Iran, the Plaintiffs who are immediate family members of the Surviving Injured Plaintiffs, and the  Plaintiffs who are immediate family members of the Surviving Injured *Schooley* Plaintiffs, have suffered severe emotional distress, shock, extreme mental anguish, pain and suffering, loss of solatium, loss of society and companionship, and past and future economic losses including medical expenses, lost income, and loss of earning capacity.

305.    Defendant, by engaging in this intentional, extreme, outrageous, reckless and unlawful conduct, intentionally and recklessly inflicted severe emotional distress upon plaintiffs.

306.    Defendant's conduct in providing material support to Hezbollah for the bombing of Khobar Towers was outrageous, criminal, malicious, willful, and wanton in its reckless indifference to human life and the rights of others, a threat to public safety and international peace and security, and in violation of fundamental norms of international law, warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

**COUNT V**
**LOSS OF COMPANIONSHIP OF SPOUSE**
**By Mari E. DeLacy**
**(Under 28 U.S.C. § 1605A(a), South Carolina Code § 15-75-20 and South Carolina common law)**

307.   Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

308.   Plaintiff **Mari E. DeLacy**, the wife of surviving injured plaintiff **Sandra J. Beneway**, was born in Northern Ireland and is a British citizen. At the time of the attack on Khobar Towers on June 25, 1996, Ms. DeLacy was a national permanent resident of the United States domiciled in South Carolina and was the common law wife of Ms. Beneway.   *Stone v. Thompson*, 428 S.C. 79, 833 S.E.2d 266 (2019); *Parks v. Lee* (Lawyers Weekly No. 008-001-17, 9 pp.) (Thomas White IV, J.) York County Family Court 2016-DR-45-1061.

309.   The attack on Khobar Towers constituted battery, assault, and intentional infliction of emotional distress upon Sandra Beneway.  Ms. Beneway sustained severe injuries in the bombing including lacerations from shattered glass, resulting in the loss of her left eye.  As a direct consequence of the intentional and tortious actions of defendant Iran, Ms. Beneway's wife, Ms. DeLacy, was deprived of her right to the companionship, aid, society and services of her spouse, constituting a loss of companionship of spouse under South Carolina Code §15-75-20. Further, Ms. DeLacy suffered severe emotional distress, extreme mental anguish, pain and suffering, loss of solatium, loss of society and companionship, and past and future economic losses including medical expenses, lost income, and loss of earning capacity.

310.   Defendant's conduct in providing material support to Hezbollah for the bombing of Khobar Towers was outrageous, criminal, malicious, willful, and wanton in its reckless indifference to human life and the rights of others, a threat to public safety and international

peace and security, and in violation of fundamental norms of international law, warranting an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request that this Court grant judgment in their favor against defendant Iran and grant plaintiffs:

A.  Compensatory damages against defendant Iran in the amount of THREE BILLION DOLLARS ($3,000,000,000);

B.  Punitive damages;

C.  Post-judgment interest;

D.  Reasonable costs and expenses;

E.  Reasonable attorney's fees; and

F.  Such other and further relief as the Court may determine to be just and equitable in the circumstances, including but not limited to leave of court to amend this Complaint as the interest of justice requires.

Respectfully submitted,

_____/s/ Joshua M. Ambush_
Joshua M. Ambush
Bar No. MD 27025
Law Offices of Joshua M. Ambush, LLC
106 Old Court Road, Suite 303
Baltimore, Maryland 21208
Phone: (410) 484-2070
Facsimile: (410) 484-9330
joshua@ambushlaw.com